EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Richard Negrón Vélez<br><br>        Peticionario<br><br>               v.<br><br>Autoridad de Carreteras y Transportación<br><br>        Recurrida | Certiorari<br><br>2016 TSPR 210<br><br>196 DPR \_\_\_\_ |

Número del Caso: CC-2014-887

Fecha: 3 de octubre de 2016

Tribunal de Apelaciones:

        Región Judicial de Guayama, Panel III

Abogado de la parte Peticionaria:

        Lcdo. Jesús Morales Cordero

Abogada de la parte Recurrida

        Lcda. Gelmarie Colón Ralat

Materia: Ley del Programa de Incentivos, Retiro y Readiestramiento, Ley Núm. 70 de 2 de julio de 2010: Alcance de la renuncia de derechos que realiza un empleado público al acogerse a los beneficios del retiro temprano que provee la Ley Núm. 70-2010

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Richard Negrón Vélez<br><br>    Peticionario<br><br>        v.<br><br>Autoridad de Carreteras y Transportación<br><br>    Recurrida | CC-2014-887 | *Certiorari* |

Opinión del Tribunal emitida por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ

San Juan, Puerto Rico, a 3 de octubre de 2016.

Nos corresponde interpretar por primera vez la Ley del Programa de Incentivos, Retiro y Readiestramiento, *infra*. Particularmente, debemos precisar cuál es el alcance de la renuncia de derechos que efectúa un empleado público al acogerse a los beneficios que provee ese estatuto.

Con ello en mente, procedemos a exponer el trasfondo fáctico y procesal que originó la controversia ante nos.

I

El Sr. Richard Negrón Vélez (señor Negrón Vélez o peticionario) laboró como empleado gerencial de la Autoridad de Carreteras y Transportación (ACT o recurrida) hasta el 28 de diciembre de 2012, cuando fue efectiva su

renuncia para acogerse al retiro temprano. Así, luego de 27 años como servidor público, éste se acogió a la jubilación al amparo de la Resolución 2010-028 de la ACT, mediante la cual se adoptó un Programa de Incentivos, Retiro Temprano y Readiestramiento, conforme a lo dispuesto en la Ley del Programa de Incentivos, Retiro y Readiestramiento, Ley Núm. 70 de 2 de julio de 2010, 3 LPRA sec. 8881 *et seq.* (Ley Núm. 70-2010). Durante su empleo con la ACT, el señor Negrón Vélez ocupó varios puestos en el servicio de carrera y de confianza. Específicamente, ocupó el puesto de Subdirector del Área de Administración de Autopistas, adscrito al servicio de carrera, y el de Director del Área de Administración de Autopistas, adscrito al servicio de confianza. Además, el señor Negrón Vélez ocupó este último puesto de forma interina. Luego de que el peticionario cesara en el puesto de Director, fue reinstalado a su puesto de Subdirector en el servicio de carrera.

Como resultado de su reinstalación, la ACT le reconoció un aumento del 10% del sueldo que devengaba en el puesto de confianza, según lo permite el Reglamento de Personal de la ACT. El aumento de salario que se le asignó a esos efectos fue certificado por la Subdirectora del Área de Recursos Humanos de la ACT (Subdirectora de

Recursos Humanos) mediante un Informe de Cambio Enmendado con fecha de 16 de noviembre de 2012.[1]

El 3 de diciembre de 2012, la Subdirectora de Recursos Humanos emitió otra enmienda al Informe de Cambio, en la cual consignó que se dejaba sin efecto el aumento salarial reconocido al señor Negrón Vélez por su reinstalación al servicio de carrera, por razón de la vigencia de la veda electoral que dispone el Art. 21 del Reglamento de Personal de la ACT.[2] Ante ese escenario, el 4 de diciembre de 2012, la Subdirectora de Recursos Humanos solicitó una dispensa para que se reconociera el aumento salarial del señor Negrón Vélez durante la vigencia de la veda electoral. Particularmente, informó que se reinstaló al señor Negrón Vélez al puesto de carrera por acuerdo transaccional y que, como condición, se le asignaría el salario al tipo máximo de la escala 18, donde ubica el

---

[1] En esa misma fecha, el entonces Secretario Interino de la ACT cursó una comunicación al Director de la Oficina de Capacitación y Asesoramiento en Asuntos Laborales y de Administración de Recursos Humanos (OCALARH) para informarle de la aprobación del pago de diferencial por interinato al Sr. Richard Negrón Vélez (señor Negrón Vélez o peticionario), según dispone el Reglamento de Personal de la ACT.

[2] El Art. 21 del Reglamento de Personal de la ACT prohíbe que el Director Ejecutivo efectúe cualquier transacción de personal relacionada con las áreas esenciales al principio de mérito, tales como cambios o acciones de retribución, entre otras, durante el periodo de 2 meses antes y 2 meses después de la celebración de las elecciones generales. Esta disposición reglamentaria establece que el incumplimiento con la veda electoral allí dispuesta conllevará la nulidad de la transacción efectuada. No obstante, contempla la posibilidad de que el Director de la OCALARH apruebe una transacción de personal relacionada con la retribución mediante una dispensa.

puesto de Subdirector que ocupaba el peticionario. Asimismo, indicó que al señor Negrón Vélez se le otorgó el tipo máximo de la tabla de escalas salariales de empleados gerenciales con fecha de 1 de enero de 2003, en lugar de utilizar la tabla enmendada, efectiva el 9 de agosto de 2004. Por tanto, solicitó autorización para ajustar el salario por reinstalación del peticionario de $7,768 a $9,348 mensuales, equivalente al 10% del sueldo que devengaba en el puesto de confianza y $120 correspondiente al aumento gerencial, según la tabla enmendada de escalas salariales.

En vista de ello, el 20 de diciembre de 2012, el señor Negrón Vélez renunció mediante carta al puesto de Subdirector. En la referida comunicación indicó que presentaba su renuncia luego de evaluar la certificación emitida por la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura (ASR), la cual reflejaba que su pensión sería de $4,674 mensuales, que constituye el 50% de su sueldo de $9,348 mensuales, actualizado al 29 de febrero de 2012. De igual forma, hizo constar lo siguiente: "no renuncio a ningún beneficio adicional que pueda aplicar antes de la fecha de efectividad de esta renuncia". *Véase* Apéndice del *certiorari*, pág. 50. El entonces Director Ejecutivo de la ACT aceptó la renuncia del señor Negrón Vélez mediante carta de 21 de diciembre de 2012. En la aceptación de la renuncia no se rechazaron ninguno de los términos

señalados por el señor Negrón Vélez en su carta de renuncia. Tampoco se le impuso condición alguna al peticionario para aceptar su renuncia. *Véase* Apéndice del *certiorari*, pág. 72.

No fue hasta el 6 de mayo de 2013, ya transcurridos más de cuatro meses desde su renuncia, que el señor Negrón Vélez recibió su primer pago de pensión por jubilación. No obstante, para sorpresa de éste, el pago de su pensión fue menor a la cantidad certificada por la ASR. Ello se debió a que la ACT no le reconoció los ajustes salariales correspondientes al 10% del sueldo que devengaba en el puesto de confianza y los $120 correspondientes al aumento gerencial, según la tabla enmendada de escalas salariales para el puesto de Subdirector. Ante ello, el peticionario reclamó en varias ocasiones a la ACT el pago de su pensión, según certificada por la ASR, y otros emolumentos que ésta se obligó a pagar. No obstante, sus esfuerzos resultaron infructuosos.

Así las cosas, el 2 de julio de 2013, el señor Negrón Vélez presentó una apelación ante la Junta de Apelaciones de la ACT (Junta de Apelaciones). Solicitó que se le ordenara a la recurrida ajustar la cuantía de su pensión de $3,884 a $4,674 mensuales, para atemperarla a la certificación emitida por la ASR. En ese sentido, el señor Negrón Vélez destacó que la ASR emitió otra certificación el 4 de enero de 2013, en la cual se reitera que su pensión debe ascender a $4,674 mensuales. Específicamente,

sostuvo que la ACT le adeuda $6,800, por concepto del 10% de aumento salarial que dejó de recibir, y $4,185, por razón del diferencial que se le aprobó por interinato. De igual forma, aseguró que la cantidad que se le pagó por concepto de liquidación de licencia de vacaciones y enfermedad también debía ser ajustada, pues se computó a base del salario que devengaba antes de los ajustes salariales que se le reconocieron.

En cuanto al aumento salarial del 10%, indicó que la ACT declinó hacer el ajuste salarial que correspondía amparándose en que estaba vigente una veda electoral que impedía que se realizaran transacciones de personal relacionadas con cambios o acciones de retribución. No obstante, aun luego de haber culminado el periodo de veda electoral no se le han pagado las sumas adeudadas por concepto del aumento salarial. En lo que respecta al pago de diferencial por interinato, sostuvo que no reclamó esta deuda antes de jubilarse porque la agencia aceptó la deuda y se comprometió a pagar el diferencial.

En oposición, el 22 de octubre de 2013, la ACT presentó una moción de desestimación con perjuicio. En ésta, alegó que el señor Negrón Vélez renunció a las reclamaciones incoadas al acogerse al retiro incentivado establecido por la ACT mediante la Resolución Núm. 2010-028. En apoyo a sus argumentos, la ACT acompañó su moción con un Informe de Cambio con fecha de 20 de diciembre de 2012, del que surge que el sueldo del señor Negrón Vélez

ascendía a $7,768 mensuales, efectivo al 28 de diciembre de 2012.

Así las cosas, el 29 de octubre de 2013, la Junta de Apelaciones dictó una Resolución Final mediante la cual desestimó la apelación presentada por el peticionario. Ello, por entender que la elección del señor Negrón Vélez de participar del programa de retiro temprano constituyó un relevo total y absoluto, y una renuncia de derechos de toda reclamación actual o potencial, basada en su relación de empleo con la ACT.

Oportunamente, el señor Negrón Vélez solicitó reconsideración mediante la cual planteó que las reclamaciones instadas ante la Junta de Apelaciones no están ni pueden estar incluidas en la renuncia de acciones que efectuó al acogerse al retiro incentivado en virtud de la Ley Núm. 70-2010.[3] En lo pertinente, enfatizó que la diferencia en la cuantía de la pensión no puede haber sido renunciada, ya que se acogió a la jubilación a base de la información que surge de la certificación emitida por la ASR. Destacó que la ACT le asignó la pensión de $3,884 mensuales amparándose en un Informe de Cambio que es contrario al que la ACT presentó ante la ASR para que se autorizara su jubilación. Aseguró que el Informe de Cambio

---

[3]El peticionario presentó la moción de reconsideración el 26 de noviembre de 2013 y nunca fue resuelta por la Junta de Apelaciones de la ACT, por lo que debe entenderse denegada de plano desde el 11 de diciembre de 2013, según lo dispuesto en la Sec. 3.15 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (LPAU), 3 LPRA sec. 2165.

que acompañó la ACT con su moción de desestimación no fue el que se le entregó al aprobarse su retiro. De esa forma, sostuvo que el documento sometido a la ASR para la aprobación de su solicitud de retiro fue el Informe de Cambio con fecha de 16 de noviembre de 2012.

Así pues, el señor Negrón Vélez señaló que esos documentos demuestran que renunció y se acogió al retiro temprano bajo unos términos que fueron aceptados por la ACT y, luego, fueron cambiados unilateralmente por ésta, sin que se le notificara y sin un debido proceso de ley. Adujo que estas actuaciones de la ACT violentaron las obligaciones contractuales habidas entre ellos y sus derechos adquiridos. De igual modo, arguyó que la variación unilateral de los términos para su retiro por parte de la ACT constituyó un incumplimiento contractual que da lugar a la resolución del contrato con la devolución de las prestaciones y el pago de daños por el incumplimiento. Finalmente, puntualizó que la expectativa de que se ajustara su salario no era un reclamo que tenía al acogerse al retiro, sino una obligación de la ACT con la condición suspensiva de que expirara la veda electoral. Por tanto, aseguró que su reclamo nació luego de que la ACT se negó a pagarle el retroactivo del aumento y al computar la pensión a base de un sueldo que no incluye tal aumento, aun cuando ya se había cumplido la condición suspensiva.

Habida cuenta que la Junta de Apelaciones denegó de plano la reconsideración presentada, el 10 de enero de 2014, el señor Negrón Vélez instó un recurso de revisión judicial ante el Tribunal de Apelaciones, mediante el cual solicitó que se revocara la determinación de la Junta de Apelaciones y se ordenara la devolución del caso al referido foro para que atendiera su reclamación en los méritos. En esencia, reiteró tanto sus planteamientos con relación a los ajustes salariales que no se efectuaron, cuyas cantidades alega que se le adeudan, así como lo referente al incumplimiento del contrato de transacción por unilateralmente disminuirle su pensión a base de un Informe de Cambio que nunca se le notificó ni se suministró a la ASR al aprobarse su retiro temprano.

Por su parte, el 10 de marzo de 2014, la ACT presentó un alegato en el que adujo que el foro apelativo intermedio carecía de jurisdicción para atender el recurso presentado. En ese sentido, alegó que el Art. 15 de la Ley Núm. 70-2010 priva de jurisdicción al tribunal en torno a toda controversia que surja de un empleado hacia su patrono, luego del empleado haberse jubilado al amparo de la referida ley.

En cuanto al planteamiento de incumplimiento contractual que formuló el señor Negrón Vélez, la ACT alegó que no tuvieron oportunidad de argumentar en torno a este asunto ante la Junta de Apelaciones, por lo que no debe ser atendido. En lo concerniente a la resolución

dictada por el foro administrativo, esencialmente arguyó que no era necesario que la Junta de Apelaciones esperara a que se presentara prueba en una vista para resolver el asunto ante su consideración.

Atendidos los escritos de las partes, el 30 de abril de 2014, el Tribunal de Apelaciones resolvió que tenía jurisdicción para atender la controversia ante sí. Determinó que aun cuando la Ley Núm. 70-2010 establece una renuncia del empleado a aquellas reclamaciones que surjan de la relación de empleo con su patrono, ello no puede implicar que no exista el derecho a revisión judicial. No obstante, el foro apelativo intermedio confirmó la resolución emitida por la Junta de Apelaciones al concluir que por ser la propia ACT quien realiza el pago de la pensión del señor Negrón Vélez, ello constituye una controversia que surge a raíz de la relación patrono-empleado que existe entre las partes, por lo que aplica el relevo que dispone la Ley Núm. 70-2010. Oportunamente, el señor Negrón Vélez solicitó reconsideración ante el foro apelativo intermedio. Luego de varios trámites procesales, el Tribunal de Apelaciones denegó la referida solicitud.

Inconforme, el 16 de octubre de 2014, el señor Negrón Vélez presentó una petición de *certiorari* ante este Tribunal. En ésta, plantea que erró el Tribunal de Apelaciones al confirmar el dictamen de la Junta de Apelaciones a base de la aplicación de la renuncia de acciones establecida en la Ley Núm. 70-2010, aun cuando

ésta no incluye reclamaciones relacionadas al incumplimiento del pago de la pensión de retiro objeto de la transacción. Asimismo, aduce que incidió el foro recurrido al confirmar la resolución mediante la cual se desestimaron sus reclamaciones, sin contar con prueba en el expediente administrativo que sostenga las determinaciones de hechos en que fundamenta su decisión y sin ofrecerle oportunidad alguna para exponer su postura u oponerse a la solicitud de desestimación. Por último, arguye que el Tribunal de Apelaciones erró al confirmar la actuación de la ACT de rebajar su pensión de retiro, privándolo así de sus derechos propietarios sin un debido proceso de ley.

Así las cosas, el 27 de febrero de 2015, expedimos el recurso ante nuestra consideración. Como consecuencia, ambas partes presentaron sus respectivos alegatos, en los que reiteran los argumentos esgrimidos ante los foros recurridos. Particularmente, la ACT plantea que este Tribunal carece de jurisdicción para atender el presente caso. Ello, pues entiende que el Art. 15 de la Ley Núm. 70-2010 nos priva de jurisdicción con relación a esta controversia.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver conforme a derecho.

## II

En aras de reducir los gastos del Fondo General, la Ley Núm. 70-2010 creó un Programa de Incentivos, Retiro y

Readiestramiento (Programa) mediante el cual se estableció un esquema de tres componentes, cada uno con distintos criterios de elegibilidad. En lo que atañe a la controversia ante nos, el segundo componente del Programa ofrece una oportunidad de retiro temprano a empleados de carrera que cuenten con un tiempo de servicio acreditado al Sistema de Retiro de entre 15 y 29 años, sin importar su edad. Art. 4(b) de la Ley Núm. 70-2010, 3 LPRA sec. 8883. En ese sentido, se dispuso que el Programa estaba disponible únicamente a empleados de carrera elegibles en agencias de la Rama Ejecutiva, cuyo presupuesto se sufraga en todo o en parte con cargo al Fondo General. Art. 2(b) de la Ley Núm. 70-2010, 3 LPRA sec. 8881. Por tanto, se excluyó expresamente de la aplicación de la ley a las corporaciones o instrumentalidades públicas o público-privadas que funcionen como empresas o negocios privados con sus propios fondos. *Íd.*

No obstante, el Art. 22 de la Ley Núm. 70-2010, 3 LPRA sec. 8901, autorizó a las corporaciones públicas que operan con sus propios recursos, y a las agencias excluidas en el Art. 2(b) de la Ley Núm. 70-2010, a implantar un programa similar al establecido en el citado estatuto, previa autorización de sus juntas de directores u organismos directivos y la aprobación del Administrador del Programa.[4] En virtud de esta disposición, la ACT adoptó

---

[4]El Art. 22 de la Ley Núm. 70-2010, 3 LPRA sec. 8901, aclara que cuando las corporaciones públicas o agencias excluidas implanten un programa similar, deberán sufragar

un Programa de Incentivos, Retiro Temprano y Readiestramiento conforme los mismos parámetros dispuestos en la Ley Núm. 70-2010. *Véase* Resolución Núm. 2010-28 para adoptar un Programa de Incentivos, Retiro Temprano y Readiestramiento de conformidad con lo dispuesto en la Ley Núm. 70 de 2 de julio de 2010.

Por otro lado, la Ley Núm. 70-2010 dispuso que el Programa será administrado por un Comité (Administrador del Programa) que estará presidido por el Secretario del Departamento del Trabajo y Recursos Humanos (DTRH), y sus demás miembros serán el Director de la Oficina de Gerencia y Presupuesto (OGP) y el Administrador del Sistema de Retiro de los Empleados del Gobierno (Administrador del Sistema de Retiro). Art. 2 (a) de la Ley Núm. 70-2010, 3 LPRA sec. 8881. Así también, la citada ley estableció que este último dirigirá la fase del retiro. *Íd.* Conforme al

_____

con sus propios recursos el impacto económico de instaurar el Programa. Además, en estos casos será necesaria una certificación previa de sus juntas de directores u organismos directivos, ratificada por la Oficina de Gerencia y Presupuesto (OGP), a los efectos de que la participación de los empleados en el Programa no requerirá la contratación de nuevos empleados en los próximos 5 años o que el puesto puede ser ocupado mediante el traslado de otro empleado de la misma corporación o agencia.

De forma similar, este articulado expresamente impone a las corporaciones públicas o agencias excluidas la responsabilidad de sufragar la pensión de aquellos empleados que se acojan al retiro temprano en un programa similar al segundo componente del Programa. Éstas también deberán pagar las aportaciones patronales e individuales correspondientes al Sistema de Retiro, hasta tanto el empleado alcance los 30 años de servicios cotizados y la edad requerida para acogerse al retiro. Una vez cumplidos los criterios aplicables al plan de retiro correspondiente, la pensión será pagada por el Sistema de Retiro.

Art. 16 del estatuto, el Administrador del Programa tendrá todos los poderes necesarios y convenientes para la implantación de la ley. 3 LPRA sec. 8895. Así, podrá requerir a todo jefe de agencia que tome todos los actos que entienda necesarios para implantar el Programa en las respectivas agencias. *Íd.* Igualmente, preparará un Formulario de Elección y promulgará un reglamento para la implantación del Programa. *Íd.*

Cónsono con lo anterior, se aprobó el Reglamento para regir el Programa de Incentivos, Retiro y Readiestramiento (Reglamento del Programa), mediante la R. del S. 1491 del 19 de agosto de 2010. En lo que nos concierne, el Art. 12 del referido reglamento detalla el proceso que debe completarse para que un empleado pueda participar del Programa. Específicamente, establece que una vez comience el periodo de elección para que el empleado se acoja al Programa, los interesados completarán el Formulario de Elección, en el cual deberán solicitar participar en uno de los tres componentes del Programa. Luego de ello, entregarán el formulario a la agencia correspondiente durante el periodo de elección o al funcionario que ésta designe.

Culminado el periodo de elección, las agencias evaluarán todos los formularios entregados y aprobarán las solicitudes. Asimismo, entregarán al Sistema de Retiro lo siguiente: copia del Formulario de Elección entregado por el empleado; el expediente del empleado solicitante;

cualquier otro documento que el empleado presente para acogerse al Programa, y cualquier otra información que le solicite el Sistema de Retiro. Mediante la referida disposición también se estableció que el manejo y trámite de toda la documentación que se entregue al Sistema de Retiro se hará por conducto de un Coordinador Agencial para Asuntos de Retiro que debe tener cada agencia.

Una vez el Sistema de Retiro reciba toda la información requerida a las agencias, certificará el tiempo cotizado por cada empleado que sometió el Formulario de Elección. La certificación emitida por el Sistema de Retiro será entregada al funcionario designado por la agencia para estos asuntos. Por su parte, la agencia entregará la referida certificación a la mano al empleado y un documento, preparado y distribuido por el DTRH, en el cual el solicitante tendrá la opción de certificar si está de acuerdo con la certificación y decide participar de uno de los componentes del Programa o si no está de acuerdo y no participará del Programa. Finalmente, el empleado entregará el documento con su elección al funcionario designado por la agencia, para que ésta le informe inmediatamente la decisión del empleado al Sistema de Retiro.

Según se desprende del Reglamento del Programa, las agencias deberán mantener un registro, donde el empleado firmará para acreditar que ha recibido la certificación emitida por el Sistema de Retiro y que ha entregado su

elección debidamente completada y firmada. Asimismo, este cuerpo reglamentario establece que la participación de un empleado en el Programa no será efectiva hasta tanto la agencia tenga en su poder el Formulario de Elección, la certificación emitida por el Sistema de Retiro, y el documento de elección del empleado debidamente completado y firmado.

Es menester destacar que las disposiciones reglamentarias que hemos reseñado tienen su origen en los Arts. 13 y 14 de la Ley Núm. 70-2010, 3 LPRA secs. 8892 y 8893, los cuales atienden lo referente al procedimiento para la elección del empleado de participar en el Programa y la efectividad de su participación.[5] En lo concerniente al efecto de la elección del empleado de participar del Programa, el Art. 15 de la Ley Núm. 70-2010 establece que:

> Toda elección de participación en el Programa será final e irrevocable y constituye un relevo total y absoluto, y

---

[5]En esencia, el Art. 13 dispone que los interesados en acogerse a los beneficios de alguno de los tres componentes del Programa deberán completar el Formulario de Elección que prepare el Administrador del Programa y entregarlo a la agencia correspondiente durante el periodo de elección.

Por otra parte, el Art. 14 del referido estatuto preceptúa que la participación de los empleados elegibles en el Programa será efectiva a los treinta (30) días calendario del cierre del periodo de elección o a la fecha en que el Sistema de Retiro emita la certificación acreditando los años de servicio cotizados por el empleado, lo que sea posterior. Sin embargo, para que la efectividad de su participación sea final la agencia debe tener en su poder la certificación del tiempo cotizado por el empleado, según acreditado por el Sistema de Retiro. Asimismo, el empleado deberá firmar un documento en el que certifique que está de acuerdo con la certificación emitida por el Sistema de Retiro.

una renuncia de derechos de toda reclamación actual o potencial, basada en: (i) la relación de empleo y/o la terminación del mismo, bajo cualquier ley aplicable y/o (ii) las acciones, si algunas, que pudieran tomarse como consecuencia de la implantación de esta Ley. Esta renuncia de derechos tendrá el efecto de una transacción total, de toda acción o derecho, actual o potencial, conocido o sin conocer, que el empleado tenga, pueda tener o haya tenido, relacionada con su empleo y/o terminación del mismo. El efecto de este relevo y la correspondiente renuncia de derechos, será el de cosa juzgada. 3 LPRA sec. 8894.

A los fines de garantizar que la renuncia de derechos del empleado al acogerse al Programa fuera informada, en el Art. 16 de la referida ley se requirió que el formulario que se utilice para implantar el Programa contenga, entre otras cosas:

[U]na advertencia al participante[,] de forma legible y en negrilla, de que su elección de participación en el Programa será final e irrevocable y constituye un relevo total y absoluto y una renuncia de derechos de toda reclamación que pueda tener por acciones pasadas, presentes o futuras, fundamentadas en la relación patrono-empleado, que son derechos protegidos por las leyes laborales de Puerto Rico. 3 LPRA sec. 8895.

Según surge de las disposiciones antes citadas, la elección de un empleado de acogerse a la jubilación, al amparo de la Ley Núm. 70-2010, constituye una renuncia de derechos a cambio de recibir los beneficios allí provistos. Además, se dispuso expresamente que esa renuncia de derechos constituye una transacción total con efecto de cosa juzgada en torno a toda acción o derecho

del empleado que esté relacionado con su empleo o la terminación del mismo.

## III

Sabido es que en nuestro ordenamiento jurídico una renuncia de derechos se considera válida, salvo que sea contraria a la ley, el interés o el orden público, o en perjuicio de tercero. Art. 4 del Código Civil de Puerto Rico, 31 LPRA sec. 4. En el caso particular de una renuncia de derechos que surge de una transacción, es norma reiterada que ésta solo se extenderá a aquellos derechos que tienen relación con el asunto sobre el cual recae la transacción. Art. 1714 del Código Civil de Puerto Rico, 31 LPRA sec. 4826; Blás v. Hospital Guadalupe, 167 DPR 439, 449 (2006). En consecuencia, resulta ineludible interpretar el alcance de esa renuncia de derechos a la luz de los preceptos jurídicos que rigen el contrato de transacción. Veamos.

## A.

En nuestra jurisdicción, la transacción es un contrato mediante el cual las partes dan, prometen o retienen cada una alguna cosa para evitar un pleito o poner término a uno que ya comenzó. Art. 1709 del Código Civil de Puerto Rico, 31 LPRA sec. 4821. De lo anterior surge que deben cumplirse dos elementos para que un acuerdo pueda considerarse un contrato de transacción, a saber: la existencia de una controversia entre dos o más personas y la necesidad de concesiones recíprocas entre

ellas. Neca Mortg. Corp. v. A&W Dev. S.E., 137 DPR 860, 870 (1995). Asimismo, puede colegirse que existen dos clases de contratos de transacción: judicial y extrajudicial. *Íd.* En ese sentido, se configura un contrato de transacción extrajudicial cuando antes de comenzar un pleito las partes eliminan la controversia mediante un acuerdo. *Íd.* También puede ocurrir que aun estando pendiente un litigio las partes acuerden una transacción sin la intervención del tribunal. En este último caso, bastará un mero aviso de desistimiento. *Íd.* Por el contrario, si la controversia da lugar a un pleito y, luego de éste haber iniciado, las partes acuerdan eliminar la disputa y solicitan incorporar el acuerdo al proceso judicial en curso, estaremos ante un contrato de transacción judicial que tiene efecto de culminar con el pleito. *Íd.*, págs. 870-871.

Igualmente, es preciso destacar que el contrato de transacción tiene los mismos requisitos que se establecen en el Código Civil de Puerto Rico para la validez de los contratos. Esto es, para que exista este tipo de contrato deben concurrir los siguientes elementos: el consentimiento de los contratantes, el objeto cierto que sea materia del contrato y la causa de la obligación que se establezca. Art. 1213 del Código Civil de Puerto Rico, 31 LPRA sec. 3391. Estos requisitos se refieren a que el acuerdo sea consensual; que exista como objeto una polémica judicial o extrajudicial entre las partes que dé

lugar a la transacción, y su causa que consiste en eliminar la controversia mediante las concesiones recíprocas. Neca Mortg. Corp. v. A&W Dev. S.E., *supra*, pág. 871.

De igual modo, el Código Civil establece los criterios que nos guiarán en la función de interpretar el alcance de este tipo de contrato. Particularmente, dispone que una transacción comprende los objetos expresados determinadamente en ella, o que, por una inducción ordinaria de sus palabras, deben reputarse comprendidos en ésta. Art. 1714 del Código Civil de Puerto Rico, 31 LPRA sec. 4826. Cónsono con ello, hemos resuelto que los contratos de transacción deben interpretarse restrictivamente. Blás v. Hospital Guadalupe, *supra*, págs. 449-450; Citibank v. Dependable Ins. Co., Inc., 121 DPR 503, 514 (1988). Por tanto, es claro que la eficacia del contrato de transacción no puede alcanzar a otros objetos que no surgen expresamente de su contenido. Blás v. Hospital Guadalupe, *supra*, pág. 450. En lo que respecta a una renuncia general de derechos, es evidente que por más generales que sean sus términos, tiene que seguir la naturaleza de la transacción a la que es inherente y entenderse limitada a los mismos objetos de la transacción. *Íd.*

Resulta importante señalar que al interpretar los contratos de transacción también deben considerarse las normas generales de interpretación de contratos, siempre

que no sean incompatibles con la normativa aplicable a este tipo de contrato. *Íd.*; Citibank v. Dependable Ins. Co., Inc., *supra*, págs. 514-515; Sucn. Román v. Shelga Corp., 111 DPR 782, 789 (1981). Con relación a los criterios generales de interpretación de contratos, nuestro Código Civil dispone que cualquiera que sea la generalidad de los términos de un contrato, no deben entenderse comprendidos en éste cosas distintas y casos diferentes de aquéllos que los contratantes se propusieron pactar. Art. 1235 del Código Civil de Puerto Rico, 31 LPRA sec. 3473. Asimismo, recordemos la máxima que rige en nuestro ordenamiento en materia de interpretación de contratos, a saber: si los términos de un contrato son claros y no existe duda en torno a la intención de los contratantes, debemos ceñirnos al sentido literal de sus cláusulas. Art. 1233 del Código Civil de Puerto Rico, 31 LPRA sec. 3471. No obstante, si las palabras utilizadas en el contrato parecen ser contrarias a la intención evidente de los contratantes, prevalecerá la intención de éstos al pactar. *Íd.* De resultar necesario juzgar esa intención de las partes al contratar, debemos considerar sus actos anteriores, coetáneos y posteriores al contrato, y cualquier otro factor que arroje luz en torno a sus voluntades. Art. 1234 del Código Civil de Puerto Rico, 31 LPRA sec. 3472.

**B.**

Por otro lado, es diáfana la norma estatutaria que establece que una transacción tiene el efecto de cosa juzgada entre las partes que la suscriben. Art. 1715 del Código Civil de Puerto Rico, 31 LPRA sec. 4827. La doctrina de cosa juzgada es una arraigada al interés del Estado de dar finalidad a los pleitos, de forma que los procesos judiciales no sean eternos. Blás v. Hospital Guadalupe, *supra*, pág. 446; Parrilla v. Rodríguez, 163 DPR 263, 268 (2004); Mun. de San Juan v. Bosque Real, S.E., 158 DPR 743, 769 (2003). De la misma manera, ésta responde al interés de proteger a los ciudadanos para que no sean sometidos en múltiples ocasiones a los rigores de un pleito para litigar la misma causa. Blás v. Hospital Guadalupe, *supra*, pág. 446; Parrilla v. Rodríguez, *supra*; Mun. de San Juan v. Bosque Real, S.E., *supra*.

Empero, es menester destacar que esta doctrina de cosa juzgada "no es de aplicación absoluta". Blás v. Hospital Guadalupe, *supra*, pág. 447. En reiteradas ocasiones, hemos rechazado su aplicación de forma inflexible, principalmente en situaciones que lo ameriten por razón de orden público, o cuando sujetarnos a ésta derrotaría los fines de la justicia o produciría resultados absurdos. *Íd.*; Parrilla v. Rodríguez, *supra*; Mun. de San Juan v. Bosque Real, S.E., *supra*, pág. 770; Meléndez v. García, 158 DPR 77, 92 (2002); Pagán Hernández v. UPR, 107 DPR 720, 735-737 (1978). Así, en lo referente

a los contratos de transacción, hemos sido enfáticos en que el efecto de cosa juzgada en este tipo de contrato "no opera para impedir que el juzgador interprete su extensión y aplicación al pleito judicial en el que se levanta como defensa". Blás v. Hospital Guadalupe, *supra*, pág. 447; Coop. Seguros Múltiples de PR v. Lugo, 136 DPR 203, 216 (1994); Citibank v. Dependable Ins. Co., Inc., *supra*, pág. 517; Sucn. Román v. Shelga Corp., *supra*, pág. 787. Véase, además: F.J. Peláez, *La transacción: Su eficacia procesal*, Barcelona, Ed. Bosch, 1987, pág. 163. En otras palabras, "el efecto de cosa juzgada que se le da a la transacción 'no impide que las partes puedan pedir la ejecución judicial del convenio'" ni que el tribunal juzgue la validez del propio contrato de transacción. Blás v. Hospital Guadalupe, *supra*, pág. 447; J. Puig Brutau, *Fundamentos de Derecho Civil*, 2da ed. rev., Barcelona, Ed. Bosch, 1982, T. II, Vol. II, pág. 632. El juzgador "puede revisar el sentido lógico o el acto mismo que ha cuajado en una transacción". Citibank v. Dependable Ins. Co., Inc., *supra*, pág. 517. Debemos recordar que la transacción, como todo contrato, no garantiza que los contratantes cumplirán con el acuerdo, por lo que en caso de incumplimiento de alguna de las partes resultaría necesaria la intervención judicial para procurar que la transacción rinda su finalidad esencial de dirimir divergencias en la forma convenida. Neca Mortg. Corp. v. A&W Dev. S.E., *supra*, pág. 871. Después de todo, esta

figura "nunca fue incorporada a nuestro ordenamiento jurídico para inmunizar los contratos de transacción contra la interpretación judicial ni para impedir su ejecución de acuerdo con sus términos". Blás v. Hospital Guadalupe, *supra*, pág. 449.

En consideración al marco jurídico enunciado, procedemos a resolver la controversia de epígrafe.

## IV

Como expresamos, el señor Negrón Vélez acude ante nos para que revoquemos la Sentencia emitida por el Tribunal de Apelaciones, mediante la cual se confirmó la determinación del foro administrativo de desestimar las reclamaciones instadas por éste. El foro intermedio entendió que, aun cuando pueda existir discrepancia entre la cuantía de la pensión que certificó la ASR y la cantidad que el señor Negrón Vélez recibe de pensión, el relevo de derechos y reclamaciones dispuesto en el Art. 15 de la Ley Núm. 70-2010 le impide acudir a los tribunales. Ello pues, razonó que tal reclamación constituiría una controversia que surge a raíz de la relación de empleo con la ACT y, por ende, fue transada por el peticionario al acogerse al retiro temprano. Con igual raciocinio, la ACT plantea que carecemos de jurisdicción para atender el asunto ante nuestra consideración.

Por su parte, el señor Negrón Vélez sostiene que la actuación de la recurrida de disminuir unilateralmente la cuantía de su pensión, amparándose en un Informe de Cambio

que nunca se le notificó y que no se le suministró a la ASR al momento de aprobarse su solicitud de participación en el Programa, constituye un incumplimiento del contrato de transacción que da lugar a su resolución y demás remedios contemplados en el Art. 1077 de nuestro Código Civil.[6] Por tanto, asegura que el relevo o renuncia de derechos que efectuó al acogerse al retiro temprano al amparo de la Ley Núm. 70-2010 no le impide solicitar intervención judicial para que se ordene la ejecución del contrato de transacción según convenido o su resolución. Le asiste la razón.

En este caso particular, la renuncia de derechos efectuada por el señor Negrón Vélez al acogerse al segundo componente del Programa no tuvo el efecto de privar de jurisdicción a este Tribunal ni a los foros recurridos para dilucidar el asunto de incumplimiento contractual y, en su día, ordenar el cumplimiento específico del contrato de transacción o su resolución, si procediera. Abundemos.

---

[6]Específicamente, el Art. 1077 del Código Civil dispone, en lo pertinente, que:

> La facultad de resolver las obligaciones se entiende implícita en las recíprocas, para el caso de que uno de los obligados no cumpliere lo que incumbe.
> El perjudicado podrá escoger entre exigir el cumplimiento o resolución de la obligación, con el resarcimiento de daños y abono de intereses en ambos casos. También podrá pedir la resolución, aun después de haber optado por el cumplimiento, cuando éste resultare imposible. 31 LPRA sec. 3052.

Primeramente, conviene repasar lo dispuesto en la Ley Núm. 70-2010 con relación al efecto de la elección del empleado al acogerse a los beneficios del retiro temprano.

Como expusimos, el Art. 15 de la Ley Núm. 70-2010 dispone que toda elección de un empleado de acogerse al Programa será final e irrevocable y constituye una renuncia de derechos de toda reclamación actual o potencial que esté basada en la relación de empleo o terminación del mismo. Asimismo, establece que esa renuncia tendrá el efecto de una transacción total de toda acción o derecho pasado, presente o futuro relacionado con su empleo o la terminación de éste. Finalmente, precisa que el efecto de la renuncia será el de cosa juzgada. De una mera lectura de este precepto estatutario se desprende indubitadamente que una vez el señor Negrón Vélez tomó su elección de participar del segundo componente del Programa renunció a su derecho de incoar contra la ACT toda aquella reclamación que surja de la relación patrono-empleado que existió entre ellos. Igualmente, no albergamos duda de que esa renuncia de derechos tuvo el efecto de un contrato de transacción entre las partes. Por tanto, como indicamos, resulta forzoso interpretar el alcance de la renuncia de derechos efectuada por el peticionario a la luz de la normativa jurídica aplicable a los contratos de transacción. Procedemos.

En este caso, el señor Negrón Vélez renunció a su derecho de presentar reclamaciones contra su antiguo

patrono basadas en la relación de empleo que existió entre éstos. Por su parte, la ACT le concedió el disfrute de los beneficios del retiro temprano que provee el segundo componente de la Ley Núm. 70-2010. De ese modo, ambas partes realizaron concesiones mutuas para evitar todo pleito que pudiera surgir a base de su relación de empleo o la terminación de éste. Así lo han reconocido tanto el peticionario como la recurrida.

Establecido lo anterior, reconocemos que al efectuarse el contrato de transacción las partes dieron finalidad a aquellos asuntos que fueron objeto del contrato y, por ende, constituyen cosa juzgada. Ahora bien, no podemos perder de perspectiva que en este caso el peticionario solicita que se le exija a la ACT el cumplimiento con los términos convenidos al acogerse al retiro. Específicamente, el señor Negrón Vélez reclama que se ajuste la cuantía de la pensión que está recibiendo para que se atempere a la pensión que certificó la ASR. Nótese que de una lectura restrictiva del Art. 15 de la Ley Núm. 70-2010, no puede entenderse que en esa renuncia está contenido el derecho de reclamar por incumplimiento de los términos convenidos en la transacción. Adviértase que, conforme hemos expuesto, la eficacia del contrato de transacción no puede alcanzar otros asuntos que no surgen expresamente de su contenido. No pueden entenderse comprendidos en éste cosas distintas a las que las partes se propusieron pactar. Asimismo, debemos recordar que la

transacción, como todo contrato, no garantiza que los contratantes cumplirán con el acuerdo, por lo que en caso de incumplimiento de alguna de las partes resulta necesaria la intervención judicial para procurar que la transacción se ejecute en la forma convenida.

Cónsono con ello, resolvemos que el señor Negrón Vélez retuvo su derecho a reclamar por incumplimiento del contrato de transacción que efectuó con la ACT al acogerse al retiro temprano, pues esa causa de acción por incumplimiento contractual no puede entenderse contenida entre las acciones que se renunciaron. Cabe destacar que en este caso no se pretende modificar la renuncia de derechos que formó parte de la transacción efectuada por el peticionario al acogerse al retiro temprano al amparo de la Ley Núm. 70-2010. Tampoco estamos ante una situación en la cual se intenten litigar los asuntos que ya se transaron. Más bien, la presente controversia gira en torno al posible incumplimiento de la ACT con los términos fijados en el contrato de transacción.

En vista de ello, y conforme a las disposiciones de la Ley Núm. 70-2010 y al derecho aplicable a los contratos de transacción, procedía que la Junta de Apelaciones aplicara su pericia y atendiera en los méritos la reclamación presentada por el señor Negrón Vélez para determinar si la cuantía de pensión recibida es correcta. En consecuencia, el referido foro debió analizar cuáles fueron exactamente los términos que se pactaron y que

motivaron al peticionario a efectuar la correspondiente renuncia de derechos. Solo así podía determinarse si en efecto la ACT incumplió con el acuerdo transaccional por no conceder al señor Negrón Vélez los beneficios que le prometió a cambio de la renuncia de derechos. Así lo exigían las particularidades de este caso.

Ante ello, la Junta de Apelaciones erró en la interpretación del Derecho aquí expuesto y correspondía que permitiera a ambas partes presentar prueba para estar en posición de evaluar la procedencia o no de estos planteamientos. Evidentemente, no hubo oportunidad de que las partes presentaran prueba de cómo se llevó a cabo todo el procedimiento que se dispone en la Ley Núm. 70-2010, y en el Reglamento del Programa que se promulgó para ponerla en vigor, lo cual resultaba sumamente importante para analizar, entre otras cosas, los actos anteriores, coetáneos y posteriores a la transacción que se efectuó y el posible incumplimiento contractual.

En consecuencia, resolvemos que no procedía la desestimación de las reclamaciones presentadas por el señor Negrón Vélez ante el referido foro administrativo.

## V

Por los fundamentos que anteceden, revocamos el dictamen emitido por el Tribunal de Apelaciones y devolvemos el caso a la Junta de Apelaciones de la Autoridad de Carreteras y Transportación para que atienda en los méritos las reclamaciones presentadas por el Sr.

Richard Negrón Vélez de forma compatible con lo aquí resuelto.


                                Luis F. Estrella Martínez
                                      Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Richard Negrón Vélez<br><br>    Peticionario<br><br>        v.<br><br>Autoridad de Carreteras y Transportación<br><br>    Recurrida | CC-2014-887 | *Certiorari* |

SENTENCIA

San Juan, Puerto Rico, a 3 de octubre de 2016.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia se revoca el dictamen emitido por el Tribunal de Apelaciones y se devuelve el caso a la Junta de Apelaciones de la Autoridad de Carreteras y Transportación para que atienda en los méritos las reclamaciones presentadas por el Sr. Richard Negrón Vélez de forma compatible con lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez y el Juez Asociado señor Colón Pérez disienten sin opinión escrita.

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo