ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| SOCORRO TERESA MORA DÍAZ<br><br>Recurrida<br><br>v.<br><br>DRA. IVELISSE GONZÁLEZ ESTEBAN Y OTROS<br><br>Peticionarios | KLCE202401178 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2023CV08517<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero y el Juez Campos Pérez

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de noviembre de 2024.

La Dra. Ivelisse González Esteban (doctora González Esteban o Peticionaria) presentó un *Certiorari civil y solicitud de auxilio de jurisdicción* para recurrir de la *Resolución* emitida el 16 de agosto de 2024 y notificada el 20 de agosto de 2024. En el aludido pronunciamiento, el Tribunal de Primera Instancia, Sala de San Juan (TPI o foro primario) denegó una moción de sentencia sumaria presentada por la Peticionaria. En consecuencia, ordenó la continuación de los procedimientos.

Anticipamos que, por los fundamentos que expondremos, expedimos la petición de *certiorari* y revocamos la *Resolución* del caso.

**I.**

El 8 de septiembre de 2023, la Sra. Socorro Teresa Mora Díaz (señora Mora Díaz o Recurrida) presentó una *Demanda* en contra de la doctora González Esteban por impericia médica. De allí surge que el 14 de septiembre de 2022 la señora Mora Díaz fue evaluada por la Peticionaria, quien fue contratada por la aseguradora del Municipio de San Juan, QBE Seguros, en el caso número

Número Identificador

SEN2024_____

SJ2021CV07686 sobre daños y perjuicios. La Recurrida alegó que, durante su evaluación, la doctora González Esteban manipuló su brazo izquierdo de forma abrupta y violenta, a pesar de que la evaluación médico-pericial era relacionada a su caída y los daños en su hombro derecho.[1]

La señora Mora Díaz sostuvo que se fue a su casa con un dolor fuerte en su hombro izquierdo y con dificultad de movimiento en la extremidad superior izquierda. Además, adujo que acudió a un quiropráctico, a un ortopeda y a un fisiatra, y se atendió con su médico de cabecera, quien le ordenó hacerse un sonograma que reveló que tenía los tendones partidos del hombro izquierdo. Por tanto, reclamó cien mil dólares ($100,000) por daños físicos, cincuenta mil dólares ($50,000.00) por angustias mentales y cincuenta mil dólares ($50,000.00) por el impedimento parcial permanente de sus funciones fisiológicas generales, que alega aún adolece.[2]

Posteriormente, el 14 de noviembre de 2023, la doctora González Esteban presentó su *Contestación a demanda* en la que argumentó que la Recurrida firmó un consentimiento informado. Allí, consintió a la evaluación física luego de ser advertida de que la misma le podía "provocar o agravar dolor o empeorar la disfunción existente", relevando a la Peticionaria de toda responsabilidad. También, explicó que evaluó ambas extremidades según requieren las Guías de Evaluación de Incapacidad AMA para poder establecer el grado de impedimento existente en el afectado. Además, detuvo de inmediato la evaluación del hombro derecho al observar un gesto de dolor, a pesar de que la demandante negó sentir molestias al ejecutar la maniobra. Como defensa afirmativa, alegó que la

---

[1] Apéndice del *Certiorari*, págs. 1-8.
[2] *Íd.*

Recurrida carece de prueba pericial para establecer un caso prima facie de impericia médico-hospitalaria.[3]

La codemandada Puerto Rico Medical Defense Insurance Company (PRMDI) presentó su respectiva *Contestación a demanda*. Sostuvo que no existe cubierta bajo la póliza expedida a la doctora González Esteban por los hechos a los que se refiere la *Demanda*, por razón de que la póliza no está diseñada para cubrir responsabilidad como un evaluador médico independiente o perito.[4]

Tras varios trámites procesales, el 18 de marzo de 2024, la Peticionaria presentó una *Moción de sentencia sumaria* y le solicitó al TPI que desestimara la demanda en su contra. Alegó que entre la Recurrida y la Peticionaria no se estableció una relación médico-paciente, lo cual fue expresamente aceptado por la señora Mora Díaz al firmar un relevo que lo dice. Añadió que se alcanzó un acuerdo transaccional en el que la señora Mora Díaz renunció a varios derechos, incluyendo el derecho de reclamarle a la doctora González Esteban.[5]

Por otro lado, la señora Mora Díaz presentó una *Oposición a moción solicitando sentencia sumaria*. Sostuvo que el hecho de que la doctora González Esteban la haya evaluado como evaluadora independiente de una aseguradora en un caso de daños no la exime de su responsabilidad civil. Aclaró que la Peticionaria nunca fue parte demandada en el caso SJ2021CV07686, por lo que no actuó temerariamente al presentar la demanda de epígrafe.[6]

El *Informe Preliminar entre abogados* fue sometido el 7 de octubre de 2024.[7] Así las cosas, el TPI emitió una *Resolución* el 16 de agosto de 2024, notificada el día 20 del mismo mes y año, en la que declaró No Ha Lugar la *Moción de sentencia sumaria* que

---

[3] *Íd.*, págs. 11-20.
[4] *Íd.*, págs. 23-31.
[5] *Íd.*, págs. 36-268.
[6] Apéndice del *Certiorari*, págs. 276-430.
[7] *Íd.*, págs. 432-469.

presentó la doctora González Esteban el 18 de marzo de 2023.[8] En su pronunciamiento, el TPI consignó los siguientes **hechos incontrovertidos**:

1. La Dra. González, -parte demandada en el caso de epígrafe- es un fisiatra con dirección física en 68, Calle Santa Cruz, Ste. 603, Bayamón, Puerto Rico, 00961. Su número de teléfono es 787-786-2469.

2. El 14 de diciembre de 2023, la Lcda. Adly Cruz Bravo de PRMDI, le cursó una misiva al Dr. José Suarez Castro, cirujano ortopeda, (en adelante, "DR. Suarez") mediante la cual solicitó el expediente médico de la Sra. Mora debido a que su condición física y/o emocional eran pertinente para la dilucidación del pleito. Dicho expediente médico está compuesto por varios reportes de progreso, notas médicas y órdenes m[é]dicas sobre la condición física de la Sra. Mora, que se resumen a continuación:

   a. En el 2014, el Dr. Victor P. Carlos Vargas expuso como parte del diagnóstico de la Sra. Mora que en su rodilla izquierda había un hueso y cartílago articular con cambios degenerativos compatibles con osteoartritis.

   b. En el 2015 se determinó que la Sra. Mora tenía espondilolistesis 738.4 A.LA, L5, dolor lumbar 724.2, dolor miofascial 729.1, dolor cervical 723.9 y radiculopatía lumbar 724.4 Lt L5,81 dolor miofascial 729.1, dolor cervical 723.9 y radiculopatía lumbar 724.4 Lt L5,81. El Dr. Su[á]rez concluyó que, a base de lo anterior, la paciente era candidata a un procedimiento quirúrgico descrito como *selective nerve root block*.

   c. En el 2017 y 2018 la Sra. Mora se realizó más estudios conforme a su rodilla derech[a], pero particularmente el informe emitido por el "Pav[í]a Breast & Imaging Cent[e]r" el 17 de septiembre de 2021, en la rodilla derecha de la Sra. Mora dispuso que se observó una:

      > Disminución grave del espacio articular en el compartimento patelofemoral médico, con pérdida del espacio articular y depresión subcondral tibial/fractura por insuficiencia, probablemente de naturaleza crónica/sin dislocación. La mineralización ósea está disminuida, lo que se correlaciona con DEXA. Estrechamiento moderado a severo del espacio articular en el compartimento femororrotuliano, con formación de osteofitos en la superficie rotuliana superior e inferior. Sin derrame articular significativo. La reticulación de los tejidos blandos superficiales, como se observa en el edema clínico, se correlaciona con la presentación clínica.

---

[8] *Íd.*, págs. 472-486.

d. Conforme al hombro derecho, indicó que no se había observado fractura ósea desplazada y tampoco estaba dislocado. Añadió que "[s]e descarta la mineralización ósea, correlacionándose con DEXA [y] [que] [l]as articulaciones glenohumeral y acromioclavicular están bien alineadas."

3. El 22 de noviembre de 2021, la aquí demandante Sra. Mora, instó una *Demanda* en contra del Municipio de San Juan, QBE Seguros y [e]l Estado Libre Asociado de Puerto Rico, por daños y perjuicios ocasionados por una caída que presuntamente sufrió la demandante el 16 de septiembre de 2016 en la acera de la Ave. Ashford en el área de Condado, San Juan, Puerto Rico.

a. Como parte del pleito, se refirió a la Sra. Mora a la Dra. González, quien fue contratada por [Ó]ptima Seguros para realizarle una evaluación médica independiente.

4. El 14 de septiembre de 2022, la Sra. Mora autorizó a la Dra. González a que le realizara la mencionada evaluación física "con el propósito de determinar incapacidad o daños" y acordó que ello no establecería una relación médico-paciente.

5. El 15 de septiembre de 2022, la Dra. González preparó el "Informe de Evaluación Médica Independiente", en el que hizo un recuento del historial médico de la Sra. Mora, mencionó los expedientes y documentos revisados junto a las quejas que en ese momento tenía la Sra. Mora, incluyó una descripción del examen físico realizado y lo acompañó de los diagnósticos correspondientes y de los porcentajes de incapacidad determinados.

a. En particular y respecto al examen físico, la Dra. González incluyó una descripción de la apariencia física de la Sra. Mora, información sobre su aspecto circulatorio, patrón de marcha, aspecto de la cara y sobre la espina cervical. Sobre la situación en los hombres, incluyó lo siguiente:

Palpación e inspección:
No hay calor ni rubor en los hombros. No hay cicatrices, ni hematomas, no hay áreas de despigmentación. Hay crépito marcado en el hombro derecho y leve en el izquierdo. La reclamante refiere dolor a la palpación del hombro derecho en el tendón bicipital derecho tendón del supraespinato izquierdo.

6. Cónsono con el acápite anterior, el 21 de septiembre de 2022, la Sra. Mora visitó a su quiropráctico, el Dr. Erick Cintrón, quien anotó que su queja principal fue que la Dra. González le evaluó su hombro izquierdo y desde ese momento sintió un dolor implacable que no mejoraba con hielo, analgésicos ni antiinflamatorios. Expresó que, como resultado del dolor tan severo, no podía dormir en las noches.

7. El 30 de noviembre de 2022, se suscribió el *Acuerdo transaccional confidencial y relevo final* entre la Sra. Mora y el Municipio de San Juan que dio fin al caso núm. SJ2021CV07686. En lo pertinente al caso de autos, se pactó lo siguiente:

> La Parte Demandante específicamente releva a la Parte Demandada de su reclamación por los daños que sufrió o que pueda sufrir, producto de los hechos que dieron lugar a la presentación del caso Civil Numero SJ2021CV07686, incluyendo la causa privada de acción, según provista en el Medicare Secondary Prayer Act, 42 U.S.C. Section 1395(b)(3)(A), así como si Medicare le niega cubierta por cualquier motivo, incluyendo el no haber establecido una partida para proteger los intereses de esta agencia federal.

8. El Dr. Andrés Muñiz Martínez del Doctor's Center Hospital – Centro de Medicina Especializada, atendió a la Sra. Mora el 7 de octubre de 2022, y luego de examinarla fisicamente, concluyó que su hombro izquierdo tenía un "desgarre masivo en el suprapinoso y subescapular".

9. El 19 de abril de 2023, el Dr. José J. Echenique Arana le realizó un examen físico y la diagnosticó lo siguiente: (1) Pain in left shoulder [ICD-10: M25.512], [ICD-9: 719.41], [SNOMED: 15916971000119109] y (2) Inpingement syndrome of left shoulder [ICD-10: M75.42], [ICD-9: 726.2], [SNOMED: 310411000119104]. En cuanto al curso de acción recomendado, expuso que discutió detalladamente con la Sra. Mora los beneficios y riesgos del procedimiento quirúrgico recomendado y acordaron que la Sra. Mora lo visitaría posteriormente par[a] agendar la operación.

Inconforme con el resultado, el 30 de agosto de 2024 la doctora González Esteban instó una *Moción de reconsideración*,[9] pero el 23 de septiembre de 2024, notificada dos días después, el TPI sostuvo su previa determinación mediante *Orden.*[10]

Aún insatisfecha, el 25 de octubre de 2024, la Peticionaria presentó un *Certiorari civil y solicitud de auxilio de jurisdicción* y esbozó los siguientes señalamientos de error:

> **PRIMER ERROR:** Erró el tribunal de primera instancia al denegar la moción de sentencia sumaria identificando controversias que se resuelven con la prueba admisible que obra en el expediente judicial.
>
> **SEGUNDO ERROR:** Erró el tribunal de primera instancia al no resolver que la participación de la Dra. González en el caso SJ2021CV07686 fue porque fue contratada por Óptima Seguros para rendir un servicio profesional y se limitó a expresar que "fue contratada por Óptima Seguros para realizarle una evaluación médica independiente".

---

[9] *Íd.*, págs. 502-508.
[10] *Íd.*, pág. 517.

**TERCER ERROR:** Erró el tribunal de primera instancia al resolver que el acuerdo transaccional alcanzado en el caso SJ2021CV07686 no relevó a la Dra. González.

**CUARTO ERROR:** Erró el tribunal de primera instancia al no resolver que la Demandante tenía una condición preexistente en su hombro izquierdo según surge de los expedientes médicos que obran en el caso.

**QUINTO ERROR:** Erró el tribunal de primera instancia al no resolver que la Demandante presentó el caso de autos conociendo que, como resultado del acuerdo transaccional, había relevado a la Dra. González, por lo que actuó temerariamente.

Este tribunal dispuso No ha lugar a la solicitud de auxilio de jurisdicción, el 25 de octubre de 2024, y concedió a la Recurrida un término de diez (10) días para expresarse sobre los méritos del recurso. El 1 de noviembre de 2024, la señora Mora Díaz presentó una *Oposición a certiorari a tenor con la regla 37 del Reglamento del Tribunal de Apelaciones.*

**II.**

En nuestro ordenamiento jurídico se reconoce el contrato de transacción, un instrumento útil para que las partes, mediante concesiones recíprocas, ponen fin a un litigio o a la incertidumbre de su relación jurídica.[11] Este tipo de contrato debe comprender los siguientes requisitos: (1) una relación jurídica incierta y litigiosa; (2) la intención de los contratantes de componer el litigio y sustituir la relación dudosa por otra cierta e incontestable, y (3) las recíprocas concesiones de las partes.[12] Es facultativo contratar o no hacerlo, y hacerlo, o no, con determinada persona, siempre que no sean contrarios a la ley, a la moral o al orden público, conforme al principio de la libertad de contratación.[13]

En nuestra jurisdicción existen dos tipos de contratos de transacción. El extrajudicial procede cuando las partes acuerdan eliminar la controversia antes de comenzar un litigio, sin la

---

[11] Art. 1497 del Código Civil de 2020, 31 LPRA sec. 10641.
[12] *Demeter International, Inc. v. Secretario de Hacienda*, 199 DPR 706 (2018); *Fonseca v. Hosp. HIMA*, 184 DPR 281 (2012).
[13] Art. 1232 del Código Civil de 2020, 31 LPRA sec. 9753. Énfasis nuestro.

intervención del tribunal. [14] Por otro lado, el judicial procede cuando las partes acuerdan eliminar la controversia y solicitan incorporar el acuerdo al proceso en curso, luego de haber comenzado el pleito.[15]

El Artículo 1503 del Código Civil de 2020 exige que el contrato de transacción se formalice por escrito y firmado por las partes o en una resolución o una sentencia dictada por el tribunal.[16] **En consecuencia, el contrato de transacción tiene la autoridad de cosa juzgada entre las partes.**[17] Los tribunales están facultados para velar por el cumplimiento de los contratos, cuando sean legales, válidos y no contengan vicio alguno.[18]

### III.

En la presente causa, la señora González Esteban alega que el TPI incidió al no resolver que la señora Mora Díaz presentó el caso de autos conociendo que, como resultado del acuerdo transaccional, había relevado a la Peticionaria. Le asiste la razón.

Por otro lado, la Recurrida aduce que la señora González Esteban no era parte demandada, por lo que no estaba cobijada por el acuerdo entre las partes. Sin embargo, un examen del referido documento revela que la Peticionaria sí estaba cobijada por el acuerdo transaccional.

El *Acuerdo transaccional confidencial y relevo final* incluido en el expediente ante nos dispone que la Recurrida releva irrevocable e incondicionalmente a la parte demandada, **"y a aquellas personas contratadas por ésta para rendir servicios"** de toda reclamación de cualquier naturaleza, conocida o desconocida, que tenga o pueda tener la parte demandante en su contra.[19] Es importante destacar

---

[14] *Demeter International, Inc. v. Secretario de Hacienda,* supra; *Negrón Vélez v. ACT,* 196 DPR 489 (2016).
[15] *Ibid.*
[16] Art. 1503 del Código Civil de 2020, 31 LPRA sec. 10647.
[17] Art. 1500 del Código Civil de 2020, 31 LPRA sec. 10644.
[18] *Oriental Financial v. Nieves,* 172 DPR 462, pág. 471.
[19] Apéndice del *Certiorari,* pág. 265.

que los hechos que provocan la presente demanda ocurrieron antes de firmar el referido acuerdo.

Surge también de los documentos ante nuestra consideración que el foro primario le concedió un término a la parte demandada en el pleito anterior para presentar su prueba pericial. Además, y conforme a lo anterior, es un hecho incontrovertido que la doctora González Esteban fue contratada por Óptima Seguros, la parte demandada, para realizarle una evaluación. Es decir, no está en disputa que la Peticionaria fue contratada por la parte demandada, por lo que es menester concluir que ella también queda relevada irrevocable e incondicionalmente por el acuerdo transaccional.

Por lo anterior, no resulta necesario discutir los demás señalamientos de error, solo resta desestimar la demanda incoada.

**IV.**

Por los fundamentos expuestos, expedimos la petición de *certiorari* y revocamos la *Sentencia* apelada. En consecuencia, desestimamos la causa de acción instada por la parte demandante y recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones