Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| PEDRO ANTONIO PÉREZ CRUZ<br><br>RECURRIDA<br><br>V.<br><br>KATHERINE RAMÍREZ; AWILDA COLÓN ORTIZ T/C/P AWILDA ROBLES et al.<br>PETICIONARIA | TA2025CE00013 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm. DO2022CV00217<br><br>Sobre: Enriquecimiento Injusto Nulidad de Contrato |

Panel integrado por su presidenta, la Jueza Grana Martínez, la Jueza Díaz Rivera y la Jueza Lotti Rodríguez

Grana Martínez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 22 de agosto de 2025.

La señora Katherine Ramírez (en adelante, peticionaria o señora Ramírez) solicita que revoquemos la *Resolución* emitida por el Tribunal de Primera Instancia de Toa Alta (TPI) el 14 de mayo de 2025, notificada el 19 de mayo de 2025, en la que declaró No Ha Lugar la moción presentada por esta para que se dicte sentencia sumaria a su favor.

Pedro Antonio Pérez Cruz (en adelante, recurrido o señor Pérez Cruz), presentó su oposición al recurso de *Certiorari.* Los hechos esenciales para comprender la determinación que hoy tomamos se incluyen a continuación.

**I.**

El 16 de noviembre de 2022, el señor Pérez Cruz presentó una *Demanda* sobre Enriquecimiento Injusto y Nulidad de Contrato.[1] En síntesis, este solicitó que se decretaran nulas y/o anulables las cláusulas de un contrato de opción de compra, referente a la

---

[1] Entrada 1 de Sistema Unificado de Manejo y Administración de Casos del TPI (SUMAC).

comisión a favor de la señora Ramírez, y se le ordenase a esta la devolución de los $10,680.00 depositados por el recurrido. Por su parte, la señora Ramírez y Awilda Colón Ortiz t/c/c Awilda Robles (en adelante, señora Colón Ortiz) (en conjunto, las codemandadas), presentaron su *Contestación a la Demanda.*[2] En síntesis, las codemandadas solicitaron que se declarase No Ha Lugar la referida *Demanda.* Además, la señora Ramírez mediante *Reconvención* solicitó que se condenara al señor Pérez Cruz el pago de una suma no menor de $75,000.00 por las angustias mentales y emocionales, sufridas ante las declaraciones falsas y difamatorias emitidas por este en su contra.[3] Igualmente, solicitó el pago de las costas del pleito y una suma no menor de $10,000.00 por concepto de honorarios de abogado.

Luego de varios asuntos procesales, el 13 de julio de 2024, el recurrido radicó *Demanda Enmendada*, en la cual alegó que, para 13 de marzo de 2022 la señora Colón Ortiz aceptó la oferta de $178,000.00 para la compraventa de la propiedad en cuestión y que, para el 16 de marzo del mismo año el recurrido realizó el depósito de $10,680.00 como depósito de opción de compraventa.[4] Dicho contrato de opción de compraventa se titula "*Purchase Sale Contract*" (en adelante, contrato de opción). Nuevamente, solicitó al TPI que le ordenase a la peticionaria la devolución de los $10,680.00 depositados como opción, ya que esta no tenía autoridad alguna en ley para retener dicho depósito.

El 13 de agosto de 2024, las codemandadas contestaron la *Demanda Enmendada*, en el cual negaron una vez más las alegaciones.[5] Por su parte, la señora Ramírez alegó que el señor Pérez Cruz no solicitó una segunda prórroga a la parte compradora

---

[2] Entrada 31 y 35 de SUMAC TPI.
[3] Entrada 35 de SUMAC TPI.
[4] Entrada 65 de SUMAC TPI.
[5] Entrada 70 y 72 de SUMAC TPI.

ni a esta para completar el proceso de financiamiento.[6] A su vez, sostuvo que el contrato expiró y el recurrido decidió no extenderlo por una segunda vez. De igual forma, la peticionaria adujo que el señor Pérez Cruz decidió no continuar con el proceso de financiamiento con el Banco Oriental y por voluntad propia desistió de continuar con la transacción de compraventa. Añadió, que, conforme a los términos del contrato de opción, no existía justa causa para devolverle el depósito al recurrido, por lo que la demanda es frívola.

El 11 de febrero de 2025, luego de transcurrido el período del descubrimiento de prueba, las partes codemandadas sometieron *Moción Conjunta Solicitando se Dicte Sentencia Sumariamente*.[7] Allí, explicaron que el señor Pérez Cruz no tiene derecho a la devolución del depósito, ya que fue este quien desistió de comprar la propiedad inmueble. En específico, sostuvieron que el 30 de junio de 2022, mediante correo electrónico, el recurrido indicó lo siguiente:

> Buenas tardes. A pesar de todos mis esfuerzos y presentar todos los documentos peticionados por el banco, la hipoteca no fue aprobada en el plazo acordado, que expira hoy, 30 de junio del 2022. Para confirmar se puede comunicar con la oficial [de Oriental Bank], Vivian Peña.
>
> Lamento mucho que no se haya podido completar el proceso, pero no voy a continuarlo. Espero que pueda devolverme el depósito en un plazo de tiempo razonable. Que tenga buenas tardes. Énfasis, nuestro.[8]

Asimismo, el 1 de julio de 2022, a la solicitud de la peticionaria de la carta de negación del banco, el señor Pérez Cruz mediante correo electrónico, indicó lo siguiente:

> Al momento no hay carta de negación. Simplemente el banco siguió exigiendo documentos luego de haber sometido los que según ellos era lo necesario, fuera de un tiempo razonable. Encima de todo, no me daría tiempo de hacer los arreglos, en una casa que tasó debajo del precio de venta y en la que se necesita invertir bastante dinero todavía. Como había dicho anteriormente, yo no iba a seguir alargando el proceso, y tampoco me gustó la manera de proceder del banco (estoy considerando asesorarme con un abogado a ver si se puede tomar acción legal), ni la manera en que se apartó

---

[6] Entrada 70 de SUMAC TPI.
[7] Entrada 94 de SUMAC TPI.
[8] Entrada 94, Anejo 17 de SUMAC TPI.

a Irina de este caso, luego de que ella estuvo trabajando y en comunicación constante conmigo [...][9]

De lo anterior, las codemandadas sostuvieron que, de esas comunicaciones, quedaba claro que el recurrido fue la parte que decidió, unilateralmente, no continuar el proceso sobre la solicitud de préstamo con Oriental Bank. Además, las codemandadas señalaron las siguientes cláusulas del contrato de opción:

9. Repairs of the property required by the mortgage institution as a condition to grant financing will be at the expense of the OPTANT BUYER(S) and will be made before the closing of the sale, for which the OWNER(S) will allow access to the OPTANT BUYER(S) or its contractors to the property, during regular working hours, including Saturdays and Sundays.

10. The OPTANT BUYER(S) relieves the owner(s) and the Real Estate Broker, Katherine Ramirez, ..., of any damage suffered by the OPTANT BUYER(S), its contractors or third parties, as a result of those tasks. If the mortgage loan is denied, for any reason, the repairs will not be refundable and will be for the benefit of the OWNER(S). WARNING: Repairs should only be made when the loan is approved by the mortgage institution and such repairs are the only pending procedure for the final approval.

.    .    .    .    .    .    .    .    .

13. The sale is subject to the approval of a mortgage loan from the lending institution to the OPTANT BUYER(S). Both the OWNER and the OPTANT BUYER(S) must do everything in their power to expedite the loan and avoid acting negligently.

14. **If the transaction is not completed within the term of this contract for reasons attributable to the OPTANT BUYER(S), it is agreed that the money given as an option deposit will be forfeited in its entirety, unless there is just cause, and the said amount will be the commission of the Real Estate Broker.**

15. All parties agree that the following SHALL NOT be considered just cause: (1) failing to provide necessary information; (2) voluntary delays in delivery of the documents; (3) not having the funds available for closing; (4) not having verifiable income; (5) voluntarily non-compliance with the agreed terms; (6) change of employment or other personal reasons.[10]

En desacuerdo, el recurrido radicó un escrito titulado *Oposición a Moción Conjunta Solicitando se Dicte Sentencia Sumariamente y en Solicitud para que se Dicte Sentencia Sumaria a*

---

[9] Íd.
[10] Entrada 94, Anejo 3 "Purchase Sale Contract" de SUMAC TPI.

*Favor de la Parte Demandante.*[11] Allí, el señor Pérez Cruz solicitó que se dicte *Sentencia Sumaria* a su favor ya que de los documentos no controvertidos surgía que las dilaciones en otorgarse la compraventa de la propiedad inmueble en controversia fueron totalmente atribuibles a las partes codemandadas y la institución financiera, y no del recurrido. Esto, ya que el contrato exclusivo de corretaje al 6% fue suscrito por la señora Colón Ortiz, por lo que hacía improcedente retenerle a este último el depósito de opción en controversia.

Por su parte, el 21 de abril de 2025, las codemandadas radicaron una moción titulada *Réplica a Oposición a Moción Conjunta Solicitando se Dicte Sentencia Sumariamente y Oposición a la Solicitud para que se Dicte Sentencia Sumaria a Favor de la Parte Demandante.*[12]

Finalmente, TPI emitió *Resolución* el 14 de mayo de 2025, notificada el 19 de mayo de 2025, en la que declaró los siguientes hechos no controvertidos:

1. El 10 de marzo de 2022, el demandante-reconvenido contactó por mensaje de texto a la codemandada reconviniente Katherine Ramírez para sacar cita para ver la propiedad objeto de este pleito.

2. El 12 de marzo de 2022, la codemandada reconviniente Katherine Ramírez le asignó a otra corredora de bienes de raíces, Irina Gutiérrez Llenza, C-22278, para que le mostrara la propiedad al demandante-reconvenido.

3. El 12 de marzo de 2022, el demandante-reconvenido hizo una oferta de $178,000, que consistía en: aportar la cantidad de $89,320 en cash y el remanente de ochenta y ocho mil dólares con seiscientos ochenta dólares ($88,680) iba a ser financiado con una institución bancaria de su preferencia.

4. **La oferta de $178,000.00 no estaba sujeta a tasación.**

5. El 13 de marzo de 2022, la oferta fue aceptada por la vendedora, la codemandada Awilda Colón Ortiz.

---

[11] Entrada 100 de SUMAC TPI.
[12] Entrada 104 de SUMAC TPI.

6. El 16 de marzo de 2022, el demandante-reconvenido hizo un depósito de opción de compraventa por la cantidad de $10,680.00.

7. Las partes, demandante-reconvenido y la codemandada Awilda Colón Ortiz, firmaron el contrato "Purchase Sale Contract.

8. El 18 de abril de 2022, el Demandante-Reconvenido suscribió un documento intitulado "Acknowledgement of Intent to Proceed" con Oriental Bank.

9. El demandante-reconvenido pidió financiamiento para un préstamo hipotecario por la cantidad de $84,000.00.

10. Entre los documentos que firmó con el Oriental Bank, el Demandante Reconvenido, el Borrower's Certification & Authorization dispone en su último párrafo que, si el Demandante Reconvenido se niega a proveer información, su solicitud se atrasará o será rechazada.

11. El 18 de abril de 2022, Oriental Bank le envió una carta al Demandante Reconvenido con una oferta inicial en la que le exhortó su colaboración con la entrega de documentos para finalizar la transacción.

12. La carta antes señalada, detallaba al Demandante-Reconvenido que entre los imprevistos que pudiera afectar el trámite hipotecario atribuibles al deudor: no entregar documentos solicitados, inconsistencia con información suministrada.

13. Entre los documentos que firmó con Oriental Bank, el Demandante Reconvenido, recibió un documento titulado "Your Home Loan Toolkit", en la cual le recomienda hacer una inspección de la propiedad para ver si está en buena condición. Citamos: "The inspector works for you and should tell you whether the home you want to buy is in good condition and whether you are buying a "money pit" of expensive repairs. Get your inspection before you are finally committed to buy the home.

14. El 18 de abril de 2022, el Demandante Reconvenido firmó las divulgaciones enviadas por Oriental Bank.

15. El 19 de abril de 2022, Oriental Bank inició el caso a proceso.

16. El 21 de abril de 2022, un estudio de título reveló que la propiedad en cuestión estaba inscrita bajo la madre de la codemandada, Luz María Ortiz Díaz.

17. El 28 de abril de 2022, Oriental Bank le envió un comunicado al Demandante-Reconvenido para actualizar documentos y se envió verificación de empleo.

18. El 2 de mayo de 2022, la oficial del préstamo, Vivian Marie Peña Irizarry, señaló que verificó estudio de título, el nombre de la viuda Luz María Ortiz Díaz, ambos no coinciden. Bajo el CRIM a nombre del difunto Agustín Díaz Marrero, catastro, cabida correcto y verificados.

19. El 3 de mayo de 2022, la oficial del banco, Vivian Marie Peña Irizarry, anotó con relación al CRIM que no está a nombre de la vendedora (codemandada Awilda Colón) debido a que no hay documentación presentada. Le pidió documentación al comprador y a la realtor para completar el expediente.

20. El 6 de mayo de 2022, Oriental Bank recibió una tasación del bien inmueble.

21. El informe de tasación concluyó un valor de mercado de ciento cincuenta y dos mil dólares ($152,000.00).

22. El tasador recomendó que se realizaran unas reparaciones que costaban $5,000.00, las cuales incluían: 1. Tratamiento de sellado al techo 2. Reparar techo 3. Instalar reja de seguridad en la puerta del pasillo, 4. Reparar liqueo de tubería sanitaria, 5. Reparar trabajos de hierro, 6. Reparar alero, 7. Reparar losas, 8. Limpieza general y 9. Pintura interior y exterior.

23. El 6 de mayo de 2022, la oficial del préstamo, Vivian Marie Peña Irizarry, conversó con el Demandante-Reconvenido y le envió por email copia de la tasación.

24. En el email donde se le acompaño la tasación, la oficial de Oriental Bank, Vivian Marie Peña, le escribió al demandante: "Te envío la tasación para tu revisión, la misma vino por debajo del precio de venta y con reparaciones. Para aceptar la propiedad se tienen que hacer los arreglos.

25. El 16 de mayo de 2022, Surillo Pumarada & Dahdah Ramírez emitió una opinión legal, donde dispuso: "Documentos de Herencia están en orden, pero presentados en finca principal y no en la que es. Se le informó al Lcdo. Hernández que corrija. Una vez corrija hay que actualizar estudio de título para que aparezca presentada la Declaratoria de Herederos de Luz María Ortiz Díaz. Vendedora vive en Florida, USA. Sujeto a proyecto de escritura de Compraventa y factura.

26. El 17 de mayo de 2022, Surillo Pumarada & Dahdah Ramírez emitió una opinión legal, donde dispuso: Documentos de Herencia están en orden, pero presentados en finca principal y no en la que es. Se llamó al Registro de la Propiedad y ellos armonizan. Favor hacer estudio de título, declaratoria de herederos fue presentada al asiento 2021-106944-BY04. Vendedora vive en Florida, USA. Sujeto a proyecto de escritura de Compraventa y factura.

27. El 18 de mayo de 2022, la oficial de Oriental Bank le pidió al Demandante-Recovenido copia de los estados bancarios de Popular, Chase del mes de mayo, talonario del mismo mes y carta que no está casado.

28. El 25 de mayo de 2022, la co-demandada Katherine Ramírez presentó en el CRIM la solicitud de cambio de dueño.

29. El 26 de mayo de 2022, la oficial de Oriental Bank, escribió que "se analiza solicitud y se coloca "Return to Process" por lo siguiente:
    a. Documentar si fue trasladado a PR de su empleo.
    b. Completar hoja sobre el cálculo de ingreso.
    c. Carta del dueño de la casa donde vive "Rent Free"
    d. En la URLA tenemos un comprador soltero con un dependiente de 2 años, pero en la Planilla 2021 tenemos que está casado con un dependiente, favor de aclarar y documentar.
    e. Consulta a Póliza, CRIM tiene Exoneración a nombre de otro dueño y la dueña actual vive en FL.
    f. Indagación BPPR 2/22.

30. El 1 de junio de 2022, el Oriental Bank solicitó el adendum extendiendo término del contrato.

31. Las partes firmaron el acuerdo "Addendum to Purchase Sale Contract", cuya fecha efectiva fue el 31 de mayo de 2022, la cual extendió la fecha hasta el 30 de junio de 2022 para realizar la compraventa.

32. El acuerdo "Addendum to Purchase Sale Contract", dispone que todos los demás términos y condiciones del Contrato (autorizado el 30 de marzo de 2022) seguirán igual.

33. El Sr. Pedro Antonio Pérez Cruz firmó Addendum to Purchase Sale Contract el 14 de junio de 2022 y la Sra. Awilda Robles firmó el 10 de junio de 2022.

34. El 13 de junio de 2022, la codemandada Katherine Ramírez envió a Oriental Bank la documentación del CRIM y a su vez, le solicitó que le enviaran el desglose de los gastos de cierre para los vendedores y carta de financiamiento.

35. El 30 junio de 2022, cuando ya vencía el plazo concedido el demandantereconvenido Pedro Antonio Pérez Cruz le envió un email a la codemandada reconviniente Katherine Ramírez.

36. El 1 de julio de 2022 a las 11:25 am, Oriental Bank le envió al Sr. Pedro Antonio Pérez Cruz una carta de 10 días solicitando carta del contable sobre la razón para enmendar las planillas.

37. El 1 de julio de 2022 a las 11:48 a.m., el demandante-reconvenido Pedro Antonio Pérez Cruz envió la comunicación escrita del Banco Oriental enviada a él, 1 de julio de 2022, que lee así: Tus documentos han sido evaluados y hemos determinado que requerimos la siguiente información adicional para poder tomar una decisión sobre tu solicitud de crédito hipotecario. Please send the following documents: *Income-Explanatory Letter-Carta de Contable razón enmendar planillas. De no recibir los documentos solicitados, el Banco podría entender que no deseas continuar con la transacción. Agradeceremos los proveas dentro del término de 10 días.

38. El 16 de noviembre de 2022, la parte demandante radicó la Demanda de autos.

39. El 13 de julio de 2024, la parte demandante enmendó el párrafo 13 de su Demanda que lee así: Transcurridos dichos términos, la parte codemandada Awilda Colón Ortiz y la parte demandante, no se exigieron ni requirieron el cumplimiento específico del acuerdo de compraventa antes descrito, y el acuerdo suscrito entre las partes por la suma de $178,000.00 para la compraventa de la casa residencial objeto en controversia quedó frustrado por razones ajenas a la voluntad de la parte demandante, debido a que cuando el banco realizó la tasación de dicha propiedad la misma tasó un valor menor al pactado entre las partes, es decir, la misma tasó $152,000.00, por lo que no era disponible el financiamiento por el precio pactado. En adición, para que procediera el financiamiento la institución bancaria requería arreglos y mejoras sustanciales de la propiedad en controversia tales como, por ejemplo: a. reparación y tratamiento de techo; b. Instalación de verja de seguridad; c. Reparación de liqueos en la tubería sanitaria; d. Reparación de verjas de hierro y e. reparación de lozas. Reparaciones que el demandante no podía costear y que conllevaban tiempo y dinero y esfuerzos que estaban fuera de los términos y condiciones del contrato de opción suscrito entre las partes.

40. El 9 de marzo de 2024, la parte demandante contestó el Primer Pliego de Interrogatorios y Requerimientos de Admisiones cursado por la parte codemandada Awilda Colón. Específicamente en el interrogatorio número ocho (8), que lee como sigue "Diga si es cierto o no que el término de sesenta (60) días de la opción de compra y la enmienda de treinta (30) días vencieron sin usted haber ejercido la opción de compra", el demandante contestó "No, yo di el depósito de $10,680, lo único que faltaba era tramitarse la compraventa con la institución bancaria y adjudicarse dicha cantidad de dinero a la compraventa final. [13]

---

[13] Entrada 106 de SUMAC TPI.

No obstante, el TPI en la misma *Resolución* explicó que existía controversia sobre hechos esenciales, por lo cual era meritorio celebrar un juicio en el que las partes pudiesen ofrecer prueba testifical y documental.[14] Según sostuvo, esto le permitiera al Tribunal determinar: (1) si el hecho de que no se haya concretizado la compraventa final se debe a acciones atribuibles al optante o la optataria (vendedor(a) o comprador(a)); (2) si alguna de las partes incumplió los términos del contrato o de los contratos y sus respectivas novaciones; (3) si procedía en derecho o no, que la señora Ramírez retuviera el dinero de opción depositado por el señor Pérez Cruz conforme a la prueba presentada y aquilatada.[15] Así pues, ante la existencia de hechos esenciales en controversia, declaró No Ha Lugar la *Moción Conjunta Solicitando se Dicte Sentencia Sumariamente* radicada por las codemandadas, e igualmente No Ha Lugar la *Solicitud para que se Dicte Sentencia Sumaria a Favor de la Parte Demandante.*

Inconforme, el 18 de junio de 2025, la peticionaria presentó recurso de *Certiorari* en el cual alega los siguientes errores:

1. En esencia, se trata de un mismo error: determinaciones de hechos incorrectas, irreconciliables con la evidencia sometida, asumir meras alegaciones como hechos probados, ignorar las cláusulas de un contrato y determinar hechos contrarios a las mismas, redactar "hechos" omitiendo la información esencial, ect., no obstante, las particularizamos, solo para facilitar estructura de análisis, pero las discutiremos en conjunto.

2. Erró el TPI al denegar la sentencia sumaria sometida por la parte Peticionaria-demandada, expresando que: "Al existir controversias sobre hechos esenciales, es meritorio celebrar un juicio en el que las partes ofrezcan prueba testifical y documental que le permita al Tribunal determinar:

   1. Si el hecho de que no se haya concretizado la compraventa final se debe a acciones atribuibles al optante o la optataria (vendedor(a) o comprador(a));

---

[14] Íd.
[15] Íd.

2. Si alguna de las partes incumplió los términos del contrato o de los contratos y sus respectivas novaciones;

3. Si procedía en derecho o no, que la codemandada Katherine Ramírez retuviera el dinero de opción depositado por la parte demandante conforme a la prueba presentada y aquilatada."

3. Erró el TPI, al acoger como determinación de hecho, la enmienda a la alegación del párrafo 13 de la demanda sin que el demandante-recurrido, sometiera evidencia para probar los hechos consignados en la misma; hechos que, por el contrario, quedan robustamente replicados y controvertidos, con otras determinaciones del TPI y con las disposiciones del Contrato de Opción. (Det. de Hecho #39)

4. Erró el TPI al considerar los hechos alegados, consignados en una enmienda a una alegación, como si fuesen hechos probados y, por tanto, determinados, y cuando de la evidencia sometida, surge la falsedad o tergiversación acomodaticia de los hechos alegados y no probados. (Det. de Hecho #39)

5. Erró el TPI al fragmentar y omitir la esencia de un mensaje escrito, que el Recurrido Demandante, le envió a la Peticionaria, donde lo omitido es la médula del presente caso: "Lamento mucho que no se haya podido completar el proceso [del préstamo hipotecario, que solicité a Oriental,) pero no voy a continuarlo." (Det. de Hecho #35)

6. Erró el TPI al considerar la contestación negativa de un hecho, a un Requerimiento de Admisiones, como un hecho probado, por la sola negación, cuando le evidencia sometida, y suscrita por el propio Recurrido-demandante, establece la inequívoca la realización del hecho cuya admisión se solicita. (Det. de hecho # 40)

7. Erró el TPI al consignar como hecho a determinarse, "sí procedía en derecho o no, que la codemandada Katherine Ramírez [Corredora de Bienes Raíces] retuviera el dinero de opción depositado por la parte demandante conforme a la prueba presentada y aquilatada", cuando el propio TPI expresa que es un asunto de Derecho, y el Contrato de Opción, en lenguaje sencillo y entendible, expone todas las situaciones en que el contrato quedaría sin efecto y la opción quedaba confiscada a favor de la Real Estate Broker, por los servicios prestados, por lo que solo restaba aplicar el derecho.

8. El TPI habla de novaciones en el Contrato de Opción, cuando las mismas no existen, excepto por una extensión de tiempo; hecho a beneficio de todas las partes.

Por su parte, el señor Pérez Cruz presentó su *Oposición a recurso de Certiorari.* Allí, alega que existe controversia en los hechos

del caso, lo cual impide que se dicte sentencia sumaria a favor de la peticionaria. Más bien, aduce que, en todo caso, lo que correspondía era que el TPI declarara Con Lugar la *Solicitud de Sentencia Sumaria* presentada a favor de este.

**II.**

**A. Certiorari**

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una decisión de un tribunal inferior. Art. 670 del Código de Enjuiciamiento Civil de 1933, 32 LPRA sec. 3491; *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023); *800 Ponce de León Corp. v. AIG*, 205 DPR 163, 174 (2020); *IG Builders et al v. BBVAPR,* 185 DPR 307, 337 (2012). Aunque el *certiorari* se reconoce como un recurso discrecional, la sensatez del juzgador se guía por unos límites. Es decir, la discreción judicial no es irrestricta y ha sido definida en nuestro ordenamiento jurídico como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016); *Negrón v. Srio. de Justicia*, 154 DPR 79, 91 (2001).

El primero de estos límites es la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V. Esta dispone en lo pertinente que el recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el TPI, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el TPI cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones

de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Superados los criterios de la Regla 52.1 de Procedimiento Civil, venimos llamados a ejercer nuestro criterio sujeto a lo dispuesto en el Reglamento del Tribunal de Apelaciones mediante la Regla 40, 4 LPRA Ap. XXII-B. Esta dispone que el tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:

A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B) Si la situación de los hechos planteada es la más indicada para analizar el problema.

C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.

D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.

E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

### B. Moción de Sentencia Sumaria

Nuestro ordenamiento procesal civil reconoce el uso y valor que tiene la sentencia sumaria para asegurar una solución justa, rápida y económica de los casos. *Cooperativa de Seguros Múltiples de Puerto Rico y otro v. Estado Libre Asociado de Puerto Rico y otros,* 2025 TSPR 78, 5 (2025). La herramienta procesal de la sentencia sumaria posibilita la pronta resolución de una controversia, cuando no es necesario celebrar un juicio en su fondo. No obstante, para que proceda es necesario que, de los documentos no controvertidos,

surja de que no hay controversia real y sustancial sobre los hechos materiales del caso. Un hecho material es aquel que puede afectar el resultado de la reclamación, de acuerdo con el derecho sustantivo aplicable. La controversia sobre los hechos materiales tiene que ser real. Cualquier duda es insuficiente para derrotar una moción de sentencia sumaria. La sentencia sumaria procede cuando no existe controversia de hechos materiales y únicamente resta aplicar el derecho. *Cruz, López v. Casa Bella y otros,* 213 DPR 980, 993 (2024); *Universal Ins. y otro v. ELA y otros,* 211 DPR 455, 471-472 (2023).

La Regla 36 de Procedimiento Civil sobre la sentencia dictada sumariamente, 32 LPRA Ap. V, permite que se dicte sentencia sumaria contra una parte sin necesidad de juicio sujeto al cumplimiento de ciertos requisitos. La parte contra quien se haya formulado una reclamación podrá presentar una moción de sentencia sumaria, no más tarde de los treinta (30) días siguientes a la fecha límite establecida por el tribunal para concluir el descubrimiento de prueba, según lo dispuesto en la Regla 36.2 de Procedimiento Civil, *supra.* Por su parte la Regla 36.3 de Procedimiento Civil, *supra,* contiene los requisitos de forma para instar una moción de sentencia sumaria y su respectiva oposición. La parte que sostenga la inexistencia de una controversia sustancial de hechos esenciales y pertinentes debe presentar una moción que se funde en declaraciones juradas u otra evidencia admisible. Además, tanto la moción como la oposición deberán cumplir con lo establecido en la Regla 36.3, *supra.* Ahora bien, la sentencia sumaria no puede dictarse cuando: (1) existen hechos esenciales controvertidos, (2) la demanda tiene alegaciones afirmativas que no han sido refutadas, (3) existe una controversia real sobre algún hecho esencial o material que surge de los propios documentos que acompañan la moción o (4) no procede como cuestión de derecho. *Cooperativa de Seguros Múltiples de Puerto Rico y otro v. Estado Libre*

*Asociado de Puerto Rico y otros, supra,* pág. 6; *Universal Ins. y otro v. ELA y otros, supra,* pág. 472.

Por otro lado, las declaraciones juradas en apoyo u oposición a la moción de sentencia sumaria tienen que estar basadas en el conocimiento personal del o de la declarante, contener hechos admisibles en evidencia y demostrar que el declarante está cualificado para declarar sobre su contenido. Regla 36.5 de Procedimiento Civil, *supra.* El Tribunal Supremo de Puerto Rico resolvió en *Ramos Pérez v. Univisión,* 178 DPR 200, 216 (2010), que las declaraciones juradas con solo conclusiones y sin hechos específicos que las apoyen, no tienen valor probatorio y son insuficientes para demostrar la existencia de lo que allí se concluye. Las declaraciones juradas que son meramente conclusiones reiteradas de las alegaciones de la demanda y hechas sin conocimiento personal, son insuficientes para derrotar una moción de sentencia sumaria.

En cuanto a la revisión de la acogida o no de una solicitud de sentencia sumaria el Tribunal de Apelaciones se encuentra en la misma posición que el TPI, al momento de revisar las solicitudes. *Cooperativa de Seguros Múltiples de Puerto Rico y otro v. Estado Libre Asociado de Puerto Rico y otros, supra,* pág. 6. Al igual que el TPI tiene que regirse por la Regla 36, *supra,* y aplicar los criterios que esa regla y su jurisprudencia interpretativa exigen. Ambos foros tienen que revisar que la moción de sentencia sumaria y su oposición cumplan los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra.*

Ahora bien, en el análisis del foro revisor no se podrá considerar evidencia que las partes no presentaron en el TPI. Este foro tampoco podrá adjudicar los hechos materiales en controversia, porque esa es una tarea que le corresponde al foro primario. Es decir, la revisión del Tribunal de Apelaciones es un juicio de novo.

El foro apelativo debe examinar el expediente de la manera más favorable para la parte opositora a la moción de sentencia sumaria y hacer todas las inferencias permisibles a su favor. *Cruz, López v. Casa Bella y otros, supra*; *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 118 (2015).

En resumen, al revisar una sentencia sumaria, el Tribunal de Apelaciones tiene que evaluar si realmente existen hechos materiales en controversia. Cuando determina que existen hechos materiales en controversia debe exponer cuáles son. Además, tiene que determinar cuáles están incontrovertidos. Si encuentra que todos los hechos materiales están realmente incontrovertidos, procede que revise de novo, si el TPI aplicó correctamente el Derecho. *Meléndez González et al. v. M. Cuebas, supra*, pág. 119.

### C. Doctrina General de los Contratos

En lo aquí pertinente, el contrato es el negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento para crear, regular, modificar o extinguir obligaciones. Art. 1230 del Código Civil de 2020, 31 LPRA sec. 9751. "Lo acordado en los contratos tiene fuerza de ley entre las partes, ante sus sucesores y ante terceros en la forma que dispone la ley." Art. 1233 del Código Civil de 2020, 31 LPRA sec. 9754. Nuestro ordenamiento concede una amplia libertad de acción a las partes que desean obligarse. *Cruz, López v. Casa Bella y otros, supra,* pág. 995; *VDE Corporation v. F & R Contractors*, 180 DPR 21, 33 (2010); *De Jesús González v. A.C.,* 148 DPR 255, 263 (1999). Esto, siempre y cuando las cláusulas pactadas no sean contrarias a la ley, a la moral o al orden público. Art. 1232 del Código Civil de 2020, 31 LPRA sec. 9753.

Si los términos del contrato son claros y no dejan duda sobre la intención de las partes, se estará al sentido literal de sus palabras. Art. 354 del Código Civil de 2020, 31 LPRA sec. 6342. Ahora bien, si

de la lectura literal no es posible determinar la voluntad de las partes, es necesario juzgar la intención de estos a la luz de los actos anteriores, coetáneos y posteriores al contrato. *Cruz, López v. Casa Bella y otros, supra,* págs. 995-996; *Negrón Vélez v. ACT,* 196 DPR 489, 506–507 (2016); *S.L.G. Irizarry v. S.L.G. García,* 155 DPR 713, 726 (2001).

### D. Contrato de Opción de Compra

El Tribunal Supremo de Puerto Rico, ha establecido que las normas generales sobre las obligaciones y los contratos aplican al contrato de opción. *Matos, González v. S.L.G. Rivera-Freytes,* 181 DPR 835, 842 (2011). No obstante, el Código Civil del 2020 amplió en ciertos artículos, la naturaleza y efectos del contrato de opción de compra. En lo propio, el Artículo 1029 del Código Civil 2020, 31 LPRA sec. 8821, define la opción de compra como el derecho que faculta a su titular para que decida durante un plazo determinado el perfeccionamiento del contrato de compraventa, cuyo cumplimiento se mantuvo comprometido el concedente durante el plazo prefijado. Sin embargo, el derecho de opción a la adquisición onerosa requerirá el pago previo o simultáneo del precio fijado. Art. 1032 del Código Civil 2020, 31 LPRA sec. 8824. Puntualizamos que para su constitución el derecho de opción debe contener las estipulaciones y del domicilio a efectos de las notificaciones preceptivas y demás pactos que el constituyente o los constituyentes tengan por conveniente además de como mínimo, los siguientes requisitos:

> (a) el plazo de duración del derecho y, si procede, el plazo para su ejercicio; (b) en su caso, la voluntad del constituyente o de los constituyentes de configurar el derecho con carácter real; (c) el precio o contraprestación para la adquisición del bien o los criterios para su fijación, cuando se trate de un derecho de opción a una adquisición onerosa, indicando el precio estipulado para su adquisición. Cuando se prevean cláusulas de estabilización, deben contener criterios objetivos y el precio debe poder fijarse con una simple operación aritmética; y (d) la prima pactada para su constitución, cuando el derecho se constituye a título oneroso, indicando el precio convenido. Los contratos de

opción de compra se pueden inscribir cuando cumplan con los requisitos anteriores y consten en escritura pública. Art. 1030 del Código Civil 2020, 31 LPRA sec. 8822.

El derecho de opción puede constituirse por un tiempo máximo de cinco (5) años, si recae sobre bienes inmuebles. Art. 1031 del Código Civil 2020, 31 LPRA sec. 8823. Este derecho puede ser objeto de sucesivas prórrogas, pero cada una de ellas no puede exceder los tiempos máximos establecidos en el mismo artículo. Íd.

Si la opción se ejerce en el plazo acordado, el contrato de opción queda extinguido y a su vez se perfecciona el contrato aceptado, según haya sido previamente delimitado. *Matos, González v. S.L.G. Rivera-Freytes, supra,* pág. 842; *Mayagüez Hilton Corp. v. Betancourt, supra,* pág. 249. "Desde entonces, y no antes, las partes están obligadas a satisfacer sus respectivas prestaciones mediante el contrato definitivo". *Matos, González v. S.L.G. Rivera-Freytes, supra.*

### III.

Por estar íntimamente relacionado, discutiremos los señalamientos de error conjuntamente. En esencia, la peticionaria aduce que erró el TPI al declarar No Ha Lugar la *Sentencia Sumaria* al entender que habían hechos esenciales en controversia que requieren ser dilucidadas en un juicio. Asimismo, alega que incidió el referido foro al hacer determinaciones de hecho incorrectas, asumir meras alegaciones, ignorar las cláusulas del contrato, determinar hechos contrarios a las mismas y redactar "hechos" omitiendo la información esencial. Por último, nos solicita que se declare válido el embargo del depósito y su entrega a la corredora de Bienes Raíces.

Primeramente, conviene mencionar, que este Tribunal se encuentra en la misma posición que el TPI al momento de revisar las solicitudes de sentencia sumaria. Es decir, que la revisión que hacemos en estos casos es de novo. Para que proceda una sentencia

sumaria es necesario que, de los documentos, surja de que no hay controversia real y sustancial sobre los hechos materiales del caso. La sentencia sumaria procede cuando no existe controversia de hechos materiales y únicamente resta aplicar el derecho. *Cruz, López v. Casa Bella y otros, supra.*

A continuación, reseñamos de manera resumida los hechos que no están en controversia, así como los esenciales para resolver el caso antes nos. El 12 de marzo de 2022, el recurrido hizo una oferta de $178,000.00, de los que $88,680.00 serían financiados con una institución bancaria. La señora Colón Ortiz aceptó la oferta y estableció que esta no estaría sujeta a tasación.

Así las cosas, el recurrido y la señora Colón Ortiz, firmaron un contrato de opción de compra, titulado *"Purchase Sale Contract"*.[16] El recurrido emitió un depósito de opción de compraventa por la cantidad de $10,680.00 a favor de la peticionaria. Luego, este pidió financiamiento para un préstamo hipotecario con Oriental Bank. Dicha institución financiera, le advirtió al señor Pérez Cruz que, si se negaba a proveer información, su solicitud podía atrasarse o ser rechazada.

Posteriormente, Oriental Bank recibió la tasación del bien inmueble en cuestión y se la envió al recurrido.[17] El informe de tasación concluyó un valor de mercado de ciento $152,000.00. El tasador recomendó que se realizaran unas reparaciones que costaban $5,000.00. El 26 de mayo de 2022, la oficial de Oriental Bank, escribió al recurrido que se analizó su solicitud y se colocaba *"Return to Process"* por documentos incompletos e inconsistentes.[18]

Luego, mediante *"Addendum to Purchase Sale Contract"* se extendió la fecha del referido contrato de opción hasta el 30 de junio

---

[16] Entrada 94, Anejo 3 de SUMAC TPI.
[17] Íd., Anejo 12 de SUMAC TPI.
[18] Íd., Anejo 9 de SUMAC TPI.

de 2022 para realizar la compraventa.[19] Ahora bien, este acuerdo dispuso que los demás términos y condiciones del contrato de opción (autorizado el 30 de marzo de 2022) seguirán igual. Por consiguiente, el 1 de julio de 2022, Oriental Bank le envió al señor Pérez Cruz una carta de diez (10) días solicitando carta del contable sobre la razón para enmendar las planillas. Conforme a esto, la comunicación escrita del referido banco al recurrido lee así:

> Tus documentos han sido evaluados y hemos determinado que requerimos la siguiente información adicional para poder tomar una decisión sobre tu solicitud de crédito hipotecario. Please send the following documents: *Income-Explanatory Letter-Carta de Contable razón enmendar planillas. De no recibir los documentos solicitados, el Banco podría entender que no desea continuar con la transacción. Agradeceremos los proveas dentro del término de 10 días.[20]

Así las cosas, el TPI determinó que existían las siguientes controversias: (1) si el hecho de que no se haya concretizado la compraventa final se debe a acciones atribuibles al optante o la optataria (vendedor(a) o comprador(a)); (2) si alguna de las partes incumplió los términos del contrato o de los contratos y sus respectivas novaciones; (3) si procedía en derecho o no, que la señora Ramírez retuviera el dinero de opción depositado por el señor Pérez Cruz conforme a la prueba presentada y aquilatada. En vista de lo anterior, discutamos y analicemos cada una de estas.

En la primera alegada controversia, no hay duda de que el recurrido desistió de continuar con el proceso sobre solicitud de préstamo. Ciertamente, el TPI por alguna razón omitió incluir en sus determinaciones de hecho, la comunicación emitida el 30 de junio de 2022 por el señor Pérez Cruz. En específico, el recurrido le notificó mediante correo electrónico a la peticionaria, lo siguiente: "[a] pesar de todos mis esfuerzos y presentar todos los documentos peticionados por el banco, la hipoteca no fue aprobada en el plazo

---

[19] Íd., Anejo 15 de SUMAC TPI.
[20] Íd., Anejo 20 de SUMAC TPI.

acordado, que expira hoy, 30 de junio del 2022 . . . [l]amento mucho que no se haya podido completar el proceso, pero no voy a continuarlo".[21] De igual forma, en el mismo hilo de correos electrónicos compartidos entre estos, la señora Ramírez le solicitó al recurrido la carta de negación del banco, a lo que este contestó:

> Al momento no hay carta de negación. Simplemente el banco siguió exigiendo documentos luego de haber sometido los que según ellos era lo necesario, fuera de un tiempo razonable. Encima de todo, no me daría tiempo de hacer los arreglos, en una casa que tasó debajo del precio de venta y en la que se necesita invertir bastante dinero todavía. Como había dicho anteriormente, yo no iba a seguir alargando el proceso, y tampoco me gustó la manera de proceder del banco [...][22]

Pese a que, las referidas comunicaciones fueron parte de los anejos presentados en la solicitud de *Sentencia Sumaria* de la peticionaria, el TPI omitió incluirlas como parte de la prueba. Nótese que, es claro que de estas comunicaciones se desprende la intención del señor Pérez Cruz de desistir sobre la compraventa. Más bien, dicha intención consistía en no querer comprar una casa que tasó por debajo del precio de venta y en la que se necesitaba invertir dinero.

En ningún momento Oriental Bank le negó el préstamo al recurrido, en su lugar lo que le requirió fue que aclarara porqué enmendó las planillas. Porque aparecía en URLA como comprador soltero con un dependiente de 2 años, pero en la Planilla 2021 como casado con un dependiente. Por tanto, concluimos que el hecho de no se haya concretizado la compraventa final se debió únicamente al recurrido, al no presentar los documentos necesarios para el préstamo. Así pues, no existe controversia sobre el primer planteamiento del TPI.

En cuanto a la segunda alegada controversia, sobre si se incumplió los términos del contrato de opción y sus respectivas

---

[21] Íd., Anejo 17 de SUMAC TPI.
[22] Íd.

novaciones. Nuevamente, el TPI omitió incluir en sus determinaciones hechos materiales que disponen de esta controversia. Surge del expediente, que la llamada novación del contrato, mediante *"Addendum to Purchase Sale Contract"* solo extendió la fecha hasta el 30 de junio de 2022 para realizar la compraventa, pero mantuvo los demás términos y condiciones iguales.[23]

Asimismo, el señor Pérez Cruz al firmar el contrato de opción conocía las implicaciones de no seguir los acuerdos allí estipulados. Entre estos, se dispuso en la Cláusula 14 de dicho contrato que, "si la transacción no se completaba, dentro del plazo dispuesto en el contrato, por causas atribuibles al/los COMPRADOR(ES) OPTANTE(S), el dinero, entregado como depósito de opción, sería confiscado en su totalidad, salvo que mediase justa causa, y dicha cantidad se constituirá en la comisión de la Corredora de Bienes Raíces." (traducción suplida).[24]

Igualmente, la Cláusula 15 del contrato de opción, la cual el TPI también omitió incluir, se estableció que no sería justa causa, entre otras cosas, el: "(1) no proporcionar la información necesaria; (2) retrasos voluntarios en la entrega de los documentos . . . (5) incumplimiento voluntario de los términos acordados . . ." (traducción suplida).[25]

Ciertamente, de una lectura del contrato de opción se puede concluir que el señor Pérez Cruz incumplió las mencionadas cláusulas. Pese a que, este se comprometió hacer los esfuerzos necesarios, optó por frustrar la compraventa con su conducta intencional y deliberada. Es claro, que el recurrido trató de justificar su conducta con pretextos que la misma Cláusula 15 prohibía. De

---

[23] Íd., Anejo 15 de SUMAC TPI.
[24] Íd., Anejo 3 "Purchase Sale Contract" de SUMAC TPI.
[25] Íd., Anejo 3 "Purchase Sale Contract" de SUMAC TPI.

modo que, la prueba fue clara y patente de que el recurrido optó por no entregar la documentación necesaria para que se aprobara el préstamo y esta conducta no constituía justa causa.

Además, no hay controversia sobre que la peticionaria y la señora Colón Ortiz cumplieron con el contrato de opción en todas sus partes. Esto incluye las reparaciones que debían hacerse a la propiedad, ya que estas eran conocidas por el recurrido. Incluso, este informó a la peticionaria por correo electrónico, que contaba con un presupuesto de $7,000.00 para realizarlas.[26] Nótese que, el presupuesto indicado por el tasador de Oriental Bank fue de $5,000.00, una suma menor a la que el recurrido estaba dispuesto a incurrir. A esos efectos, el contrato de opción disponía en su Cláusula 10 que "[l]as reparaciones sólo podrán realizarse cuando el préstamo esté aprobado por la entidad hipotecaria y dichas reparaciones sean el único trámite pendiente para el cierre del préstamo". (traducción suplida).[27] Por tanto, no hay controversia de que las codemandadas cumplieron con las cláusulas del contrato de opción.

Por último, la tercera alegada controversia ya fue discutida en los párrafos anteriores. El TPI cuestionó si procedía que la señora Ramírez retuviera el dinero del contrato de opción depositado por el recurrido. Según indicamos, la Cláusula 14 del contrato de opción disponía que, si la transacción no se completaba dentro del plazo dispuesto en el contrato, por causas atribuibles al recurrido, el depósito de opción sería confiscado en su totalidad. Es sabido, que lo acordado en los contratos tiene fuerza de ley entre las partes. Art. 1233 del Código Civil de 2020, *supra*. Además, si los términos del contrato son claros y no dejan duda sobre la intención de las partes, se estará al sentido literal de sus palabras. Art. 354 del

---

[26] Entrada 104, Anejo 1 de SUMAC TPI.
[27] Íd., Anejo 3 "Purchase Sale Contract" de SUMAC TPI.

Código Civil de 2020, *supra.* Así pues, dado que, la cláusula fue clara y constituye la ley entre las partes, lo que correspondía era que la señora Ramírez retuviera el depósito del recurrido.

De todo lo anterior, es incuestionable que en este caso no hay hechos en controversia, por lo cual procedía dictar *Sentencia Sumaria.* Es decir, que el TPI declara Ha Lugar la *Sentencia Sumaria* presentada por la peticionaria, en la que validaba el embargo del depósito y su entrega a la señora Ramírez. Esto, ya que el recurrido incumplió las Cláusula 13, 14 y 15 del contrato de opción de compraventa.

**IV.**

Por los fundamentos anteriormente expuesto, expedimos el recurso de *certiorari* y se revoca la *Resolución* recurrida. De manera que, se desestima, con perjuicio, la *Demanda* del epígrafe. No obstante, queda pendiente la *Reconvención* presentada por la señora Ramírez, que debe ser atendida por el Tribunal de Primera Instancia.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones